STATE of Missouri,
Plaintiff-Respondent,

v.

Clarence COLLIER, Jr.,
Defendant-Appellant.

No. 42445.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 28, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1981.

Joseph V. Neill, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Lew A. Kollias, Kristie Green, Asst. Attys. Gen., Jeffer-

son City, George A. Peach, Cir. Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendant Clarence Collier was convicted of the crime of forcible rape under § 559.-260, RSMo Supp. 1975, and was sentenced to twenty-five years imprisonment. From this judgment and sentence he appeals setting out seven trial errors which he contends entitle him to a new trial. We affirm the judgment.

Defendant first complains of the trial court action in allowing the circuit attorney to proceed under a substitute information in lieu of indictment because the circuit attorney never sent or delivered a copy of the substitute information to counsel for defendant. The information set out the same charge of forcible rape contained in the indictment. In addition, however, the information alleged a prior conviction in order to authorize sentencing by the judge under the Second Offender Act. From the record it appears that the assistant circuit attorney orally notified defense counsel the prosecutor's intention to amend the information in order to invoke the Second Offender Act five days prior to the trial. The copy that was to be mailed to the defendant apparently was never mailed but was found in the court's file. This copy and the original information were filed five days prior to the trial. When defense counsel saw the copy on the day of trial, no request for continuance was made. He did not raise this in his motion for new trial nor has he specified in what respect his client was prejudiced other than that it changed his trial strategy. There is no showing as to what change had to be made nor can this court conceive of any at this time.

Rule 24.02 in effect at the time the information was amended (now incorporated in Rule 23.08) permitted an information to be amended or substituted for an indictment at any time before verdict if no additional or different defense was charged and if substantial rights of the defendant were not prejudiced. An amendment which invoked the Second Offender Act does not charge a different offense. *State v. Collins*, 383 S.W.2d 747, 750 (Mo.1964). Even when no notice is given as to the filing of an amended information, it is not error to deny a request for continuance where there is no showing that any defense under the charges originally made would not have been equally available under the amended charge. *State v. Lockhart*, 501 S.W.2d 163, 165 (Mo. 1973). We find defendant's first contention *to be without merit.*

For his second point relied on, defendant contends that the court erred when it ordered defendant to undergo a second psychiatric examination pursuant to §§ 552.020 and 552.030, RSMo 1978, after defendant had previously been examined by a court-appointed psychiatrist because the State's request for the second examination did not comply with the requirements of § 552.020 and for the further reason that the State did not contest the findings in accordance with the terms of the statute. This arose out of the following circumstances.

A motion was filed on behalf of the defendant on January 30, 1979, seeking a psychiatric examination. The motion alleged that defendant suffered from a mental disease such that he did not know or appreciate the nature of his conduct at the time of the commission of the crime on May 5, 1978, and further that this same disease or defect resulted in a lack of capacity on his part to understand the proceedings against him and thus made him unable to assist in his own defense. The court ordered the examination and two days after the filing of the psychiatric report the State objected to it and requested a second examination. The court denied this motion noting that the psychiatric report indicated defendant was suffering from a mental disease that caused him to be incapable of understanding the nature and wrongfulness of the alleged crime. It further found, however, he was capable of understanding the charges against him and could assist his attorney in his own defense. On April 12, 1979, the court denied the State's request for a second examination because the memorandum contained no basis for the objec-

tion and no request was made for a hearing to contest the findings of the first report. Thereafter on April 18, 1979, the assistant circuit attorney filed an amended request for second examination. This amended request was attacked by defendant on the basis that it was not filed within five days after the filing of the official psychiatric report as required by statute. Section 552.-020, RSMo 1978, provides for examination and a hearing with respect to the mental capacity of an accused to assist in his own defense. Section 552.030, RSMo 1978, provides for an examination and a judicial hearing to determine whether a defendant who has pleaded a mental disease or defect excluding responsibility for his action giving rise to the charge had such defect or disease at the time of the commission of the crime. Section 552.020.4 (now subsection 5, RSMo Supp. 1980) provides that within five days after the filing of the report both the accused and the State shall be entitled, upon written request, to an order granting them an examination of the accused by a doctor of the movant's own choosing at movant's expense. The same provision is found in § 552.030.4 except that the five days commences upon receipt of a copy of the report rather than upon the filing of the report as set out in § 552.020. From the use of the word "shall" in each section, we take it that if such a request is made within five days, by either the accused or the State, then it is mandatory that the court grant such an examination at the expense of the party requesting it. Here the State objected to the first report and requested a second examination two days after the filing of the medical report. Although the report found the defendant was capable of assisting his counsel in the trial of the case, it concluded defendant was suffering from a disease at the time of the alleged commission of the crime and hence was free of responsibility under the criminal code. The court in denying the request made by the State within the five-day period was in error because the State was entitled to the second examination if requested within that time. If the request had been made thereafter, then granting of the ex-amination would be within the discretionary power of the court. The court here was correcting its mistake with no prejudice to defendant.

■ We are supported in this conclusion by *State v. Bacon*, 501 S.W.2d 499, 501 [3] (Mo.App.1973) which recognizes that there is an absolute right to a second examination at the expense of the party requesting same after a timely motion. It further recognizes the trial court's broad discretion to grant or deny a motion made out of time.

We find defendant's second point relied on is without merit.

■ For his third contention of trial court error, defendant complains of the trial court's action in overruling an objection to questioning by the court of the State's rebuttal witness, a psychiatrist. A court has an inherent power to interrogate witnesses. Questions by the court are proper where the purpose is to develop more fully the truth and to clarify testimony that has already been given. In so doing, the judge must maintain a neutral attitude and should avoid any demonstrated hostility which might impair the atmosphere of impartiality. *State v. Cain*, 485 S.W.2d 60, 62 [3, 4] (Mo.1972); *State v. Farmer*, 536 S.W.2d 748, 751 [4–6] (Mo.App.1976); *State v. Clark*, 522 S.W.2d 332, 334 [3, 4] (Mo.App.1975).

The first psychiatrist who examined the defendant determined that he was suffering from paranoid schizophrenia but that it was in remission. This doctor also found that defendant indulged in amphetamines which produced an exacerbation in symptoms so that he was out of contact with reality and that at the time of the commission of the crime he was incapable of understanding the wrongfulness of his conduct. He concluded he was able to assist in the defense of the charge brought against him. The second psychiatrist also found defendant capable of assisting in his defense but arrived at a different conclusion as to his condition at the time of the commission of the crime. From the defendant's past history he also was of the opinion that he had a mental disease, but in interviewing him

he was told by the defendant he was willing to commit the act of which he was charged but when he did so he knew it was wrong. As to whether he was suffering from paranoid schizophrenia at the time of the commission of the act, the second psychiatrist believed that defendant was in remission at the time that the act occurred and as such he had no effect of the illness at that time. After much direct and cross-examination, certain questions were asked with regard to tests given the defendant. The court then proceeded to ask the witness what tests had been given and whether a person could have a mental disease and still be able to understand the wrongfulness of his actions. An objection was made by defendant's counsel and at a conference of the attorneys and the court, the court indicated the purpose of the questions was to clarify the differences between the opinions of the doctors. That there was confusion as to what they had testified was apparent from the brief argument that then occurred between counsel for the parties, out of the presence of the jury, as to exactly what defendant's doctor had concluded. The court offered to let the attorneys ask the questions; but since neither accepted the offer, he overruled the objection and asked the doctor to delineate the differences between his conclusions and those given by the first psychiatrist.

█ We do not find the court assumed the role of the prosecutor in attempting to clarify the testimony of the doctors. Questions were asked in neutral and impersonal language. The third point is denied.

█ The fourth contention of error is directed toward the submission of instruction nine offered by the State. Instruction nine was a copy of MAI–CR 2.32, a definitional instruction setting out the meaning of "mental disease or defect" and included parenthetical phrases excepting drug abuse without psychosis and abnormality manifested by repeated anti-social conduct. Defendant urged the court to give his instruction A, a copy of 2.32 which did not contain these parenthetical phrases. In note 2 on the use of instruction MAI–CR 2.32 where ᵃ use of these parenthetical phrases is considered, it is directed that they be left out unless the evidence justifies calling them to the jury's attention. Where evidence refers to any one or more of such matters, then they should be included in the instruction.

Here the jury was confronted with complex and technical evidence in regard to the insanity defense. Defendant claimed that he was a paranoid schizophrenic and was unable at the time of the crime to conform his actions to the requirements of the law. The State countered with psychiatric testimony to the effect that defendant was not paranoid at the time of the rape and that no mental disease or defect caused him to be unable to conform his actions to lawful behavior. The documentary evidence was replete with facts that defendant had exhibited unusual behavior because of drug abuse rather than because of psychosis and had been diagnosed as having an anti-social personality. He was diagnosed as a drug abuser for about ten years before the crime of which he was charged. The parenthetical phrases were properly included in instruction nine. *State v. Edwards*, 592 S.W.2d 308, 312 [5] (Mo.App.1979).

The defendant next contends that the evidence was not sufficient to sustain the verdict and judgment because there was no showing that defendant used any threat or force which caused the victim to fear physical violence and submit to the acts of the defendant. We briefly review the evidence.

The victim was a member of a non-demoninational Christian religious group. She had taken a vow of chastity and was engaged in taking care of women and children at an emergency shelter in the City of St. Louis. She wore a distinctive uniform which was the clerical garb of her organization. She became acquainted on the street with one Andrew Harris about a week before she was assaulted. Thereafter Harris came to the victim's work place and asked for her. He convinced her to follow him ostensibly for the purpose of talking with his sick mother. Harris then led the victim to the defendant's apartment. When Harris brought the victim in, defendant was

sweeping the floor. He did not say anything nor did he look up at her. Once inside the apartment the victim sat on a couch while Harris went into the kitchen. He then came back and turned up the television. He produced a knife, and ordered the victim to take off her clothes. She screamed but Harris started choking her with a shirt around her neck until she could not breathe. She was then forced onto a bed and made to take off her underwear. Harris was unable to consummate his intended rape of the victim and he then told defendant who had remained in the room all of the time, "Here Clarence, you take her." Harris left and the defendant proceeded to rape the nun ordering her to cooperate in a rough voice.

Defendant complains that there was insufficient evidence to find he forced the victim to engage in sexual intercourse. Defendant's contention is without merit. A man is guilty of rape when the woman submits to intercourse through fear of physical violence. This fear may be caused by the acts of one other than the defendant if the defendant at the time had knowledge that his victim was submitting through fear. *State v. Davis*, 557 S.W.2d 41, 43 [3] (Mo.App. 1977). Defendant was present all during the time that Harris threatened and assaulted the victim. He had knowledge that she had been subjected to fear by Harris' acts in brandishing the knife and partially choking her. Point five is ruled against the defendant.

For his sixth point relied on, defendant complains of the giving of instructions six and seven. Six was MAI–CR 2.10 verbatim in effect at the time that the act charged was committed. Defendant contends that this instruction which concerns general responsibility for the conduct of others was unwarranted because there was no showing the defendant acted with Harris. The complaint with regard to the use of instruction seven had to do with the last paragraph which concerned defendant's action in concert with another in the perpetration of the offense. This was the verdict-directing instruction modified by MAI–CR 2.12 and 2.30. The complaint directed toward both instructions arises out of the same contention of error brought up in the prior point concerning the insufficiency of the evidence. What we have said there also applies to the use of these instructions. There was sufficient evidence upon which the jury could find that Harris and the defendant were acting together. The fact that defendant was present during the initial assault on the victim and that he thereupon took advantage of the fear and emotional distress of the victim supports the inference that both Harris and defendant were acting together to accomplish a common purpose. The instructions were properly given. *State v. Davis, supra* at 43 [5].

Defendant's seventh and final contention of trial court error is directed to the refusal of the court to allow the defendant's request to close the final argument. Defendant reasons that since he had the burden of proof on the issue of sanity, he should have been allowed to be the final speaker during closing argument.

Instruction MAI–CR 2.68 required to be given in every case and given as instruction thirteen in this case sets out the order of argument. It requires the State to open the argument and provides the State's attorney may reply to the defendant's argument. Rule 26.02(7) (now Rule 27.02(*1*)) in effect at the time of defendant's trial provides that the prosecuting attorney concludes the argument. We rule point seven against the defendant. Finding no error, we affirm the judgment.

PUDLOWSKI and GUNN, JJ., concur.