**STATE of Missouri, Respondent,**

v.

**James Walter HENDRIX, Appellant.**

**No. WD 34752.**

Missouri Court of Appeals,
Western District.

July 17, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 28, 1984.

Application to Transfer Denied
Oct. 9, 1984.

J. Armin Rust, Regional Public Defender, Lexington, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Terry Dolence, Asst. Attys. Gen., Kansas City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Carol Marie Homfeld lives on Highway 13, the road between Higginsville and Lexington. On September 26, 1982, at approximately 12:20 p.m., she arrived home from rounding up cattle and saw a car in her driveway. She pulled in and a girl in the car started honking the horn. Two men came out of the front door of her home, "carrying rifles that were in our house."

The car in the driveway was a black Ford, four door, late 50's or early 60's model, Missouri license plate number EYX–470.

They left very fast, uprooting grass and gravel. Mrs. Homfeld entered the house, called the authorities and gave a description of the vehicle. At trial she identified a .22 calibre Remington rifle; a Remington, model 870, .12 gauge shotgun; a 22–250 calibre custom made rifle; and a .22 calibre Ruger anniversary series revolver. The weapons had been recovered from the aforementioned vehicle.

John Harrison, police officer for the City of Odessa, Missouri, observed a black Ford, license plate number EYX–470 traveling westbound on Interstate 70 about 12:45 p.m. and followed it. The vehicle exited on Highway 131 and Harrison turned on emergency equipment, red lights and siren. The vehicle accelerated and turned northbound on Highway 131. The vehicle then slowed and Officer Harrison saw a white female exit the vehicle. The vehicle struck a mailbox belonging to Dean Coates and then took off north again. Harrison testified he saw a woman in his rear view mirror walking south.

At the intersection of 131 and 24 Highway, State Trooper Isringhausen had set up a roadblock. The vehicle attempted to go around the roadblock, lost control and crashed. Sergeant Robert G. Plymell, of the Missouri State Highway Patrol, arrived at the scene following the accident, he observed that a black Ford had hit a light pole, two persons other than the police were present, one just exiting the vehicle and the other standing at the rear of the vehicle.

Sergeant Plymell identified defendant as one of those two persons. Sergeant Plymell identified a .22 rifle, shotgun, 22–250 rifle and handgun and placed their location on the floorboard of the back seat of the 1964 Ford.

Dwayne Isringhausen, State Patrol Officer, testified he set up a road block on Highway 131 and 24. Two persons in the vehicle tried to avoid the road block and crashed. Defendant Hendrix was in the back seat of the vehicle. Following the crash he ordered the occupants out of the vehicle and saw weapons on the floor under Hendrix's feet when he exited. At this time he searched Hendrix to be sure he was unarmed then handcuffed him and read him his Miranda rights. Both defendants were transported to the Lafayette County Hospital by Lafayette County Ambulance Service and after treatment to the Lafayette County Jail. Hendrix asked Isringhausen what he was charged with and was advised burglary in the first degree and he replied, "Wouldn't that be burglary second degree?", to which Isringhausen replied, "No, I believe burglary second degree is burglary of an unoccupied dwelling." To which Hendrix replied, "that the building was unoccupied."

The defendant put on several witnesses and himself in an effort to explain the events of September 26, 1982. His witnesses in order of their appearance were Sharon Bishop, Kenneth Lovett and the defendant.

Sharon testified she had known the defendant three to four years. On September 25th, she was drinking with Kenny Lovett and Judy Howald and ran into Jim Hendrix at the Hollywood Bar in Kansas City. Bishop introduced Lovett and Howald to Hendrix. The foursome stayed together that day and night. Lovett asked Jim if he wanted to ride along when he went to get "his stuff" and Jim agreed and said, "maybe I'll have a chance to get my stuff."

Lovett, Hendrix and Howald were gone when Bishop got up the morning of the 26th. Bishop testified that Missouri license plate number EYX–470 was registered to her and that she had not given Kenneth Lovett permission to borrow the plate.

Later in the day on September 26, 1982, Judy Howald called Bishop to come pick her up. Judy explained they had picked up Kenny's stuff and a woman pulled up hollering and they took off. Later a policeman came up behind them and Lovett started racing away, with Judy and Jim hollering for him to stop. Lovett slowed down and kicked her out.

Lovett, star witness for Hendrix, and a convicted felon, having been previously convicted of robbery first degree and burglary second degree and stealing, when asked, "As a practical matter your memory is pretty foggy as evidenced by your, 'I don't remember, maybe it was that way,' responses in court today." "That's right," he replied.

Lovett told of his intention to go get his clothes in Gallatin. At Lexington they encountered a disabled car and took the occupants to Marshall. On the way back to Lexington they stopped at a house on a curve and he and Hendrix entered. Lovett claimed he told Hendrix to "load the stuff up, it's mine, ...." Lovett's memory once again became amnestic when questioned about the guns and what he told Hendrix.

Lovett gave an unsigned statement to Sergeant Plymell of the Missouri State Patrol, admitting burglarizing a house in Saline County and the instant house. He states that he and Jim broke into the Homfeld residence. That Jim went upstairs looking for jewelry and he got jewlry and a pair of boots. That the back door of the house was unlocked and, "we went in."

At the time of Hendrix's trial Lovett claimed the statement was false. Lovett could not recall any conversation with Hendrix or Howald while fleeing the police and could not remember if they said anything to him. He could not remember if anything was said by Hendrix when they sped from the Homfeld house.

Lovett stated he wanted to talk to the prosecuting attorney before he signed the statement. But the prosecuting attorney never came to talk to him. Lovett wanted to know what he would get before he signed the statement.

As the questioning of Lovett continued he became more evasive and finally the following occurred:

Q. Just to save us more time, are you going to take the Fifth Amendment on any other question I ask?

A. That's right.

Q. You are tired of talking now?

A. That's right.

Hendrix took the stand in his own behalf and he verified the events of the 25th as related by Bishop. He acknowledged that Lovett inquired if he wanted to go with them and he asked them to also go to Jefferson City to get some of his things.

He acknowledged taking the people from the stranded car to Marshall. He was smoking marijuana that morning and stated his condition as, "just kind of coasting ...." Hendrix acknowledged being twice convicted of burglary, and once of fraud for an insufficient funds check. Hendrix gave a lengthy account of the break-in of the house near Marshall but those facts are omitted here since he was not tried on that charge in this case. Hendrix admitted to entering the Homfeld home. He entered and saw Lovett fooling with a gun cabinet and he heard glass break. He saw a pile of stuff on the living room floor. Hendrix took the guns out of the gun case and carried out the guns, including a pistol and a pair of boots. They were women's cowboy boots and Hendrix stated Lovett was going to give them to Judy.

At this juncture Mrs. Holmfeld arrived home and Hendrix and Lovett entered their car and sped off.

After a long series of questions and denial of guilt by Hendrix the prosecuting attorney asked the following:

Q. That you thought that he was going to his sister's house or his girlfriend's house and that he had permission to do that; is that correct?

A. Yes, sir.

Q. Mr. Hendrix, this is the very first time that you have ever made that version of the facts known to anyone other than yourself, possibly your attorney; is that correct?

A. I didn't understand the question.

Defendant moved for mistrial and it was denied.

Appellant raises three points of error. The first claims the trial court erred in not granting a mistrial following prosecuting

attorney's question to defendant regarding defendant's version of the facts.

There is no doubt that the post-arrest silence of a defendant after receiving the *Miranda* warning may not be used against him. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Missouri Supreme Court in *State v. Stuart,* 456 S.W.2d 19, 22 (Mo. banc 1970) held, "failure to volunteer an exculpatory statement is not admissible as an admission ...."

The state concedes that the accused's silence is inadmissible in evidence.

This is not the situation confronting us. The defendant did make voluntary statements to Trooper Isringhausen after his arrest and after receiving the Miranda warning. *State v. Harper,* 637 S.W.2d 342, 345 (Mo.App.1982); *State v. Gilreath,* 643 S.W.2d 274, 277 Mo.App.1982); *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

The defendant in *Anderson v. Charles, supra,* gave two versions of the events leading to his arrest. One at the time of arrest and one at the trial. Defendant complained about prosecutor's cross-examining him regarding his failure to tell police about the second version of the crime.

The court noted that when a defendant makes a statement to police he cannot complain about being cross-examined about what he did not say as well as what he did tell the police since he has not in fact remained silent.

The defendant elected to waive his right to remain silent during his custodial arrest and proceeded to make statements to Trooper Isringhausen. The defendant may not now complain that the prosecuting attorney improperly commented or questioned him regarding his post *Miranda* warning silence. *State v. Gilreath, supra* at 277.

It would of course be beneficial to the system if prosecutors would be more sensitive to this narrow issue. But often in their zeal they are carried away with desire for conviction.

The court should not lightly entertain such a drastic remedy as a mistrial. A mistrial should be granted only when the incident is so grievous that the prejudicial effect can be removed no other way. *State v. Camper,* 391 S.W.2d 926, 928 (Mo.1965). Declaration of a mistrial rests largely in trial courts discretion. *State v. Camper, supra.* The trial court is in a much better position to judge prejudicial effect. *State v. Harper, supra* at 346.

Here the defendant was asked if he'd ever revealed this version of the facts before. The defendant moved for a mistrial which was denied and then moved the court to instruct the jury to disregard the question—a motion he withdrew before a ruling.

"A discretionary ruling is presumed to be correct and the burden of demonstrating abuse is therefore cast on appellant." *State v. Leonard,* 606 S.W.2d 403, 408 (Mo. App.1980).

A general statement of the law is that it is not permissable for the state to argue or introduce evidence regarding defendant's post-arrest failure to volunteer an exculpatory statement. *State v. Roth,* 549 S.W.2d 652 (Mo.App.1977); *State v. Benfield,* 522 S.W.2d 830, 834–35 (Mo.App.1975).

The defendant has a privilege against self-incrimination and the opposite—the right not to have his silence used against him. The question then is, were either of these rights violated? Was the prosecuting attorney's question such that it drew the jury's attention to defendant's failure to earlier give an exculpatory statement?

The remarks must be reviewed in the context of the trial. The defendant's response to the prosecuting attorney's question was, "I didn't understand the question," followed immediately by his counsel's objection and the motion for a mistrial. It is not probable that this question and answer was reasonably likely to draw the juror's attention to defendant's failure to make exculpatory statement. *Eichel-*

*berger v. State,* 524 S.W.2d 890, 894 (Mo. App.1975). Point I is ruled against appellant.

Defendant next assigns as error the trial court's questioning of Officer Plymell, claiming the court assisted the prosecuting attorney in adducing evidence of an essential element and breached its duty of impartiality to the appellant.

Such argument arises from the fact that the court after ascertaining the witnesses familiarity with the Homfeld house inquired of Sergeant Plymell:

Q. What county is that located in?

A. Lafayette County.

At which time defendant's attorney moved for a mistrial. The trial judge must use his inherent powers to interrogate a witness with caution and wisdom. Discretion should always be the watch word for trial judges. In the instant case venue had been established, before Sergeant Plymell testified, by the second question asked of Mrs. Homfeld.

■ "Questions by the court are proper where the purpose is to develop more fully the truth and to clarify testimony that has already been given." *State v. Collier,* 624 S.W.2d 30, 33 (Mo.App.1981). The judge must maintain a neutral attitude and avoid demonstrated hostility. *State v. Cain,* 485 S.W.2d 60, 62 (Mo.1972).

■ No hostility is preceived in the trial judges's question from a complete reading of the record and venue had already been established. Certainly the judge had a duty to clear up any misconceptions. The point is ruled against defendant.

■ For his third point defendant raises the issue of ineffective assistance of counsel by failing to give a "mere presence" instruction (MAI—CR2d 3.66).

The notes on use provide that the mere presence instruction "should be given if requested in proper form either by the defendant or by the state." The fact that defendant failed to raise this argument at trial or in his motion for a new trial preserves nothing for appeal. Except as "plain error" under Rule 29.12(b), which it

is not. However, assume for this exercise that appellant had preserved this point. The appellant admitted he entered the Homfeld house and removed personal effects. The "mere presence" instruction now sought is inconsistent with the evidence and the appellant's defense.

Defendant's counsel claims *he* was ineffective, this is better left to a motion pursuant to Rule 27.26, V.A.M.R. 1978. *State v. Bromwell,* 631 S.W.2d 698, 699 (Mo.App. 1982).

The defendant's attorney conducted a thorough and sound trial.

It is well established that failure to request a certain instruction is not necessarily ineffective assistance of counsel. *Juralos v. State,* 641 S.W.2d 445, 447 (Mo.App. 1982); *Williamson v. State,* 628 S.W.2d 895, 899 (Mo.App.1981).

The issues raised lack merit and are ruled against the defendant.

Judgment affirmed.

All concur.