**STATE of Missouri, Respondent,**

v.

**David Lee CLAY, Appellant.**

**No. 53669.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 1988.

Application to Transfer Denied
Feb. 14, 1989.

Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., and Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Presiding Judge.

In this jury tried case, defendant appeals his convictions of assault in the first degree, in violation of § 565.050, RSMo 1986, and armed criminal action, in violation of § 571.015, RSMo 1986. We affirm.

There are three allegations of error. First, that the trial court erred in overruling defendant's objection and motion for mistrial when the court questioned a physician because the court "abdicated [its] judicial impartiality and assumed the role of Prosecutor". We disagree, because the court only clarified testimony previously given. Second, that the trial court erred in overruling defendant's motion to suppress the shotgun and shells seized from his residence because they were obtained by an unlawful search and seizure. We disagree, because the items obtained were in "plain view", and thus lawfully seized.

For his third point, defendant alleges that the trial court erred by "sustaining the State's objections during [defendant's] opening statement, his testimony, and cross-examination of [the victim], and by denying his offer of proof seeking to call two impeaching witnesses; because this denied [defendant] the right to confront, cross-examine, and impeach the victim with evidence relevant to her credibility in that he sought to show that she had developed psychological problems." We disagree, because no offer of proof was actually made; furthermore, the trial judge did not abuse his discretion in excluding the evidence.

The victim met defendant at a 1983–84 New Year's Eve party and entered into a relationship with him that proved to be "stormy". Defendant beat her; once he ripped her clothes off, and cut her hair and wig with scissors. He also had forced her, at gunpoint, to sodomize him. The victim repeatedly left him, only to return.

In late March, 1986, defendant, after catching the victim's two-year old son writing on the wall with a crayon, beat the victim and held a rifle to the child's head. The victim left the next morning, and subsequently moved into an apartment.

On May 2, 1986, at about 6 or 7 p.m., the victim received a telephone call from defendant asking her what she was doing there. She hung up; he called again. After hanging up again, she called defendant back in 15 to 20 minutes and got no answer. At about 9 p.m. that evening, the victim saw defendant going down the stairs outside her apartment. She called the police; after waiting a while, she went downstairs to wait for the police.

At approximately 9:19 p.m. the police arrived. As the victim walked towards the police, there was a single gun blast; the victim was hit in the back. Although the victim told the police that defendant shot her, he could not be found in the area.

The victim was hospitalized for three months; she received extensive injuries, and surgery was required on her kidney and colon. She was partially paralyzed and confined to a wheelchair for 10 months.

Defendant's first point is that the trial court erred in overruling his objection and motion for mistrial when "the court abdicated his judicial impartiality and assumed the role of prosecutor in that the court assisted the state in establishing an essential element of its case, that the victim suffered serious physical injury, and did so in such a manner as to indicate his satisfaction with the proof, thus commenting on the sufficiency of the case as to this element and aligning himself with the prosecution on the case as a whole."

At trial, after direct, cross, redirect, and recross examination of victim's treating physician, Dr. Rinehart, this exchange took place between Dr. Rinehart and the court:

THE COURT: Doctor, you indicated that other blood tests or counts were made during the course of her hospitalization. Did the latest count taken before her discharge, was it above the count that was made when she was first admitted?

THE WITNESS: May I look at the chart, please?

THE COURT: You may.

THE WITNESS: The last blood count determined in the chart during the admission for the gunshot wound treatment was 33.9. The initial blood count taken when she was admitted to the emergency room was 29.5. So the answer is yes, the last determination was higher than the first.

THE COURT: But still below normal.

THE WITNESS: That's correct.

THE COURT: Okay. Now, based upon your best medical knowledge and experience, the injury that you observed and treated, would you say that that created a substantial risk of death?

THE WITNESS: The final blood count—

MS. RANDALL (defense attorney): Judge, I'm going to—

THE COURT: No, I'm talking about— I'm talking about the injury you observed upon admission based upon your best medical knowledge and experience, did it create a substantial risk of death?

THE WITNESS: Yes it did.

THE COURT: All right. And further, did it cause a serious disfigurement or protracted loss or impairment of any function of any part of the body?

THE WITNESS: Yes it did.

Defense counsel then objected to the questioning as being extremely prejudicial. The objection was overruled. Defense counsel then moved for a mistrial, which was subsequently denied.

■ A judge must maintain a neutral attitude and avoid any demonstrated hostility which might impair the appearance of impartiality. *State v. Collier*, 624 S.W.2d 30, 33 (Mo.App.E.D. 1981). Although numerous cases have recognized that a trial judge has the right to ask questions of witnesses in order to clarify testimony, *State v. Lay*, 427 S.W.2d 394 (Mo.Div. 1 1968), a "judge should be aware that there may be a greater risk of prejudice from overintervention than from underintervention. While the judge should not hesitate to exercise authority when necessary, the judge should avoid trying the case for the lawyers." STANDARDS ON SPECIAL FUNCTIONS OF THE TRIAL JUDGE § 6–1.1 commentary at 8 (1986).*

■ Here, the record discloses that the court intervened to clarify testimony already given by Dr. Rinehart concerning a blood test, and the severity of the victim's injuries. On direct examination, Dr. Rinehart testified that the victim's injury from the shotgun blast was a hole of at least three by three centimeters (roughly, one inch square). This injury damaged the colon, requiring the removal of the left portion of the large intestine, and the creation of a colostomy. A portion of the left kidney was destroyed by the shotgun pellets. The victim also suffered a spinal cord injury and was confined to a wheelchair for ten months.

Dr. Rinehart often referred to her injuries as "severe". Although he did not say the statutory words "serious physical injury", no one could question that these injuries did not constitute serious physical injuries. Proof of the statutory element of first degree assault, serious physical injury, was established before the trial judge asked Dr. Rinehart questions. The court, then, did not help the State prove that element.

The defendant relies on *State v. Haddix*, 566 S.W.2d 266 (Mo.App.W.D.1978). There, the trial judge directed a witness to go get a document and hand it to the judge so that he could look at it. While the witness was getting the document, the judge, in the presence of the jury, said that an exhibit already in evidence did not answer a question in his mind and "I may put [the document] in as a court exhibit." Following defense counsel's objection, the court said "[Defense counsel], it's the function of this Court to see that justice is done and I am not going to sit here and see justice not done." Further colloquy oc-

* We agree with the observation that in a jury trial, "the interrogation of witnesses is ordinarily best left to counsel." *Jackson v. United States*, 329 F.2d 893 (D.C.Cir.1964). "If a trial judge has definite ideas as to what lines of inquiry ought to be pursued, he is free to call both counsel to the bench, or in chambers and suggest what he wants done." *Id.*

curred, the court read the document, and then said "That is all I need."

In holding that the trial judge's questions and comments deprived the defendant of a fair and impartial trial, the *Haddix* court particularly recognized:

"the context in which they were uttered, [they] intemperately commented on the sufficiency of the state's evidence as to an essential element of its case even though the exhibit itself was never made available to the jury, and strongly suggested that defendant's guilt of the offense for which he was standing trial was a foregone conclusion."

*Haddix* is not controlling and is distinguishable. In *Haddix*, the trial judge asked two questions about a possible document and then directed a witness to get the document, which the judge alone examined. The document was never offered into evidence, yet the judge commented "That is all I need." Further, in *Haddix* the comment to defense counsel that the judge was "not going to sit here and see justice not done" was an intemperate comment. That situation did not happen here.

Here, although the questioning could better have been left to the lawyers, the examination by the court was brief. Further, there was no apparent bias or hostility shown towards the defendant. We do not find that the trial judge assumed the role of Prosecutor, or that he abused his discretion. Point denied.

Defendant's next point is that the trial court erred in overruling his motion "to suppress the shotgun and shells seized from his residence by the police because they were obtained by an unlawful search and seizure in that the search warrant described a different weapon entirely, a rifle".

Separate and apart from this case, defendant was a suspect in connection with the murder of Roosevelt Mixon. In that investigation, the police sought and obtained a search warrant for defendant's residence. The warrant authorized a search for a rifle used to commit that murder, as well as for ammunition.

While searching for that rifle and ammunition, they found the shotgun at issue. At the time it was discovered, the rifle had not been found; in fact, it was never located.

The fact that the shotgun and the shells were not mentioned in the warrant does not require their suppression. Items discovered in a search authorized by a valid warrant may be seized if: (1) they are observed in plain view while the police officer is in a place where the officer has a right to be; (2) discovery is inadvertent; and (3) it is apparent to the police that they have evidence before them. *State v. Strickland*, 609 S.W.2d 392, 395 (Mo.banc 1980); *State v. Clark*, 592 S.W.2d 709, 713 (Mo.banc 1979).

Here, the search warrant authorized the police officers to be in defendant's entire house and to look in any area that could contain a rifle and ammunition. The officers, then, had the right to look under the insulation in the basement rafters, where the shotgun was found. At that time, the shotgun was in plain view. *Cf. U.S. v. Nedd*, 582 F.2d 965 (5th Cir.1978) (police could properly look under a mattress in executing a search warrant for heroin, and a pistol which they saw when they lifted up the mattress was admissible under the "plain view" doctrine.) and *U.S. v. Wright*, 641 F.2d 602 (8th Cir.1981) (seizure of shotgun in a closet discovered during search pursuant to warrant authorizing search for controlled substances was within "plain view" doctrine.)

There is nothing in the record that indicates that the police knew that the shotgun or shells were in the house until they were ultimately discovered. They were discovered during the execution of a valid search warrant and within its permissible scope and intensity. The discovery was inadvertent. The officers involved in the search, however, were aware the victim here had been shot with a shotgun, and that the victim had named the defendant as the person who shot her. Thus, when the shotgun was discovered, it was apparent that they had evidence against defendant.

The seizure of the shotgun and shells was justified under the "plain view" doc-

trine. The trial court did not err in overruling the motion to suppress. Point denied.

Defendant's final point is that "the trial court erred by sustaining the state's objections during [his] opening statement, his testimony, and cross-examination of [the victim], and by denying his offer of proof seeking to call two impeaching witnesses because this denied [him] the right to confront, cross-examine, and impeach the victim with evidence relevant to her credibility in that he sought to show that she had developed psychological problems including depression and hallucinations as the result of a rape in 1984." Defendant argues that he should have been allowed to impeach the victim in support of his defense that she had not seen him at all before the assault.

■ When an objection is sustained to proffered evidence, the party offering the evidence must show its materiality and relevancy by way of an offer of proof in order to preserve the matter for appellate review. *State v. Dixon*, 655 S.W.2d 547, 557 (Mo. App.E.D.1983). The offer of proof must state facts which are specific and sufficient in detail to establish the admissibility of the evidence sought to be introduced. *State v. Umfrees*, 433 S.W.2d 284, 286 (Mo.banc 1968); *Dixon* at 557.

■ As has often been suggested by this court, as well as by the Supreme Court, the preferable way to make an offer of proof is to place the witness upon the stand and ask questions, and secure answers, outside the presence of the jury. *State v. Townsend*, 737 S.W.2d 191, 192 (Mo.banc 1987); *Dixon* at 557. An offer, however, may be in narrative form, so long as the offer is definite, is specific, is not just mere conclusions of counsel, and sets out sufficient facts to demonstrate the evidence's admissibility. *Townsend* at 192; *Dixon* at 557. When a party does not make the offer in question and answer form, the party runs a greater risk that the court will find the offer insufficient. *Townsend* at 192. Such is the case here.

■ Defendant did not make his offer of proof by examining the two proposed witnesses in question and answer form. Rather, his offer of proof was in narrative form. One witness was said to be a records custodian with the Salvation Army. The offer of proof as to this witness did not conform to § 490.680, RSMo 1986, because it did not identify the record or its mode of preparation, or state that it was made in the regular course of business, at or near the time of the act, condition, or event. Rather, the offer merely said that a person was the records custodian. This offer was not sufficient because it lacked specific, definite facts to demonstrate that the records were admissible.

■ As to the other witness, she was said to be a social worker with the Salvation Army. Defense counsel said that this witness recalls the victim "telling her that she was suffering from hallucinations, she was seeing things, and that she was severely depressed". Counsel's offer was not specific and definite because it did not indicate when these statements were made, although, based on other trial testimony, the possible general time frame is January, 1986.

Defense counsel told the trial court that this testimony established a prior inconsistent statement of the victim. In denying the offer, the court said that at best, it was a prior inconsistent statement of a collateral issue, and was not material or relevant. Although the trial court ruled before the state made its objection, the state also objected on lack of foundation.

■ It has long been the rule in Missouri that when the prior statement was oral, for extrinsic proof of the alleged prior statement to be admissible, there must have been a proper foundation laid by calling the attention of the witness to the "time, place, and circumstances" of the making of the statement, and to whom it was made. Mo. Evidence Restated, Sec. 613(b)(2)(A). *State v. Bennett*, 87 S.W.2d 159, 162 (Mo.Div. 2 1935). Here, the foundation was insufficient, for the victim was not advised as to whom the statement was allegedly made or of the circumstances in which it was made. Further, the trial court has broad discretion to exclude extrinsic proof of a prior inconsistent state-

ment on a collateral matter. *State v. Douglas*, 529 S.W.2d 162, 164 (Mo.App.W. D. 1975). We find no abuse of discretion. Point denied.

The judgment is affirmed.

GARY M. GAERTNER, J., concurs.

KAROHL, J., concurs in result in separate opinion.

KAROHL, Judge, concurring.

The claim of error on the first point on appeal is more extensive than that the court "only clarified testimony previously given." The majority disposes of the issue only on that justification.

The point on appeal is:

THE TRIAL COURT ERRED BY OVER-RULING APPELLANT'S OBJECTION AND MOTION FOR MISTRIAL WHEN THE COURT QUESTIONED DR. RINE-HART BECAUSE THE COURT ABDI-CATED HIS JUDICIAL IMPARTIALI-TY AND ASSUMED THE ROLE OF PROSECUTOR IN THAT THE COURT ASSISTED THE STATE IN ESTAB-LISHING AN ESSENTIAL ELEMENT OF ITS CASE, THAT THE VICTIM SUFFERED SERIOUS PHYSICAL IN-JURY, *AND DID SO IN SUCH A MAN-NER AS TO INDICATE HIS SATIS-FACTION WITH THE PROOF, THUS COMMENTING ON THE SUFFICIEN-CY OF THE CASE* AS TO THIS ELE-MENT AND ALIGNING HIMSELF WITH THE PROSECUTION ON THE CASE AS A WHOLE. (Our emphasis).

Obviously, the claim of error comprehends the manner in which the court assisted the state. However, it also charges error for comments made which were demonstrative of approval of the answers. The court accepted answers with, "Okay" and "Alright." The comments may have represented expressions of satisfaction with the sufficiency of proof of an element of the charge. Such comments by the court are different than similar statements by counsel during examination of a witness.

Defendant relies on *State v. Haddix*, 566 S.W.2d 266 (Mo.App.1978). The majority opinion attempts to distinguish the present case from the holding in *Haddix*, which granted a new trial. In *Haddix*, the trial court directed a witness to produce an exhibit and, in the presence of the jury, said "[t]his is all I need." This was done during questioning of a witness by the court and in the presence of the jury.

The charge was escape from prison. The state offered records of the custodian of the Missouri Department of Corrections to prove that defendant was lawfully confined in an institution under the control of the Missouri Department of Corrections on the date of his escape. The records, if believed, proved the element of confinement. The trial court, however, questioned the custodian about a document in the file that would indicate where the defendant was housed on any given day. The court directed the witness to produce the document. The trial court overruled an objection to the interrogation by the court. Thereafter, the document was produced and the court said, "[t]hank you. That is all I need. I don't have any further questions for Mr. Lauf."

The Court of Appeals understood that the element of confinement had been otherwise proven. It was concerned with the first and foremost duty of a trial judge to be and appear to be an impartial arbiter. "At the very least, the conduct and remarks of the trial judge conveyed *the appearance* of bias in favor of the state." *Id.* at 273. [Our emphasis]. The factual similarities in the present appeal and *Haddix* are apparent. None of the reasons given in the majority opinion justify what the trial court did. That opinion disapproves of what occured. The conduct of the trial court goes well beyond clarifying testimony, it added for the jury a statement that the injuries created a substantial risk of death. The court used that term in two successive questions. The court also added approving comments to answers received. "Okay" and "Alright" are functionally equivalent to "[t]hat is all I need."

We need not speculate why the court intervened and developed evidence involving a charged element of the crime. The court told us why. It was *not* to clarify

testimony already given by Dr. Rinehart for the benefit of the jury. The court stated for the record that he overruled defendant's objection to the court's alleged interference in the trial of the cause for the following reason:

The basis or reason for the Court inquiring is because I wanted to make it perfectly clear to an appellate court that the injuries suffered in this case either caused a substantial risk of death or that it was a cause—caused a disfigurement or protracted loss, because although this Court had a victim illustrate to the jury a disfigured little finger and testify that his arm was broken and presumably in a cast, the Court of Appeals found that there was no determination of a disfigurement nor was there a protracted loss of any use of the body, and therefore this Court should have instructed on assault second degree which the Court did not do.

After the explanation defense counsel again objected to the court using its personal feelings to bring out evidence that is against defendant. The court denied such motivation and repeated that it was following instructions of the Appellate Court on what the law was. The Assistant Circuit Attorney then said, "I'm not aware of the case, so maybe I should have asked that. I think it's so obvious that I didn't—wasn't an oversight. I just didn't ask him." Defense counsel then observed that the jury was listening to everything being said. The Circuit Attorney justified the circumstances by a comment, "Well, you started all this." Obviously, it was the court, not defense counsel, who interrupted the trial of the case and interposed its process. In the end, defense counsel declined to request a mistrial. He renewed the objection because of interference with the case by the court in asking questions that were highly prejudicial. The court denied the motion. Defendant preserved the issue in his motion for new trial.

The trial court did not intervene to clarify the testimony of Dr. Rinehart. By the court's own statement on the record he intervened in order that it would not be necessary to instruct on a lessor included offense, if requested. Such conduct may constitute a breach of the trial court's duty to be and appear an impartial arbiter. The Circuit Attorney agreed that he did not ask or obtain the same testimony received under questioning of the court.

The previous opinion referred to by the trial court is not identified in the record. It may have held that in the absence of proof of serious physical injury the court must instruct on assault second degree, if requested. We are confident that the case did not instruct the trial court to add proof of an element of the crime by intervening and questioning witnesses and approving or appearing to approve answers.

I concur only in result because severity of injury was not a disputed issue and the trial judge involved himself only with that issue. The injuries were caused by a shotgun blast. The degree of medical care was clear and certain proof the injuries satisfied proof of assault in the first degree. The disputed issue was who did the shooting, not what was the result. I cannot accept or justify the conduct of the trial court on the basis of clarifying testimony.