**STATE of Missouri, Plaintiff–Respondent,**

v.

**Louis REED, Jr., Defendant–Appellant.**

**No. 57926.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 10, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1991.

Deborah B. Wafer, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

Defendant appeals from his capital murder conviction, Section 565.001, RSMo 1978, for which he was sentenced to a term of life imprisonment without eligibility for probation or parole for fifty years. We affirm.

The evidence viewed in the light most favorable to the verdict is as follows. A woman's body, later identified as Phyllis Seals', was found in a vacant lot in the City of St. Louis on June 21, 1980. Her boyfriend, Larry Massey, was arrested for her murder, but was subsequently released because of a lack of physical evidence.

Approximately seven years later, defendant contacted Detective Terry Crawford of the Oregon State Police. Defendant was incarcerated in an Oregon state penitentiary for raping his daughter. Detective Crawford met with defendant. After Crawford advised defendant of his constitutional rights, Crawford took a detailed statement in which defendant confessed to four homicides, including the murder of Phyllis Seals.

According to defendant's statement, he met the victim at a bar called Sorrento's. Although defendant could not remember the victim's name, he was able to describe the clothes she was wearing. Defendant stated that he and the victim: (1) were at Sorrento's for one to two hours; and (2) they both had several drinks. At closing time, they decided to go to another bar. They left in defendant's car. After travelling a short distance, defendant pulled off the road and parked the car in a vacant lot next to an alley. Defendant turned toward the victim and, "for no reason at all", choked her with his hands until she stopped moving.

Defendant took the victim's shoes, and then pulled her out of the car on the passenger side. He removed her skirt, but did not have sex with her. He also took her purse, which contained approximately $90.00.

At trial, although defendant admitted committing the murder, he presented a defense of mental disease or defect. Specifically, he claimed that while he did choke the victim, he had no control over his "entity" or "vehicle" because he was possessed by a "phenomena" which controlled his body.

Defendant presented the testimony of two experts, both of whom diagnosed a mental disease or defect. Frank Colistro, a doctor of psychology, opined that defendant suffered from a thought disorder and diagnosed him as a paranoid schizophrenic. Kenneth Russ, also a doctor of psychology, diagnosed appellant as suffering from two disorders: (1) schizophrenic reaction and partial remission, undifferentiated type; and (2) organic personality syndrome. In rebuttal, the State presented the testimony of a doctor of psychology, Michael Armour, who testified that defendant did suffer from some type of personality disorder, but he did not diagnose a mental disease or defect.

Based on this evidence, the jury found defendant guilty of capital murder.

Appellant's first point is that the trial court erred in denying his motion for judgment of acquittal at the close of all evidence because there was insufficient evidence of deliberation. In reviewing a claim that the evidence is insufficient to support one or more of the elements of a crime, we view the evidence in the light most favorable to the State, accepting as true all evidence and inferences that tend to support the verdict, and disregarding all evidence and inferences to the contrary. *State v. Antwine*, 743 S.W.2d 51, 72 (Mo. banc 1987). Our function is not to weigh the evidence, rather it is to determine whether the evidence was sufficient for reasonable persons to have found defendant guilty. *State v. Bradshaw*, 779 S.W.2d 617, 620 (Mo.App.1989).

■ Section 565.001, RSMO 1978 (Repealed) provides: "[a]ny person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder." Deliberation is found when an act of killing is performed with a cool and deliberate state of mind. *State v. Endres*, 698 S.W.2d 591, 594 (Mo. App.1985). Direct evidence of deliberation is not necessary to support a capital murder conviction. *Antwine*, 743 S.W.2d at 72. Instead, it is sufficient that deliberation is reasonably inferred from the circumstances surrounding the murder. *Id.* A finding of deliberation does not depend on the time involved. *State v. Sandles*, 740 S.W.2d 169, 177 (Mo. banc 1987). Rather, it depends upon the inferences reasonably drawn from the evidence and circumstances. *Id.*

■ When viewed in the light most favorable to the verdict, the evidence is sufficient to support a finding of deliberation. Defendant met and conversed with the victim in a bar. They left, in defendant's car, to go to another bar. Defendant stopped the car, and, "for no reason at all", choked the victim until she stopped moving. He removed her shoes, skirt and purse, and dumped the body in a vacant lot.

■ Nothing indicates that defendant's conduct was brought about by sudden anger or passion. The only reason to be inferred from his pulling off the road was to carry out his intended purpose. That he had no reason for killing her, does not indicate a lack of deliberation. We find no error. Defendant's first point is, therefore, denied.

■ Defendant's second point is that the trial court erred in sustaining the State's objection to a question posed to Dr. Colistro. Defense counsel sought the doctor's opinion on whether defendant was capable of conforming his conduct to the requirements of the law on June 19, 1980.

The ruling, which defendant challenges, is set out below:

Q. Given the course schizophrenia takes in the various stages with the on-set of prodromal symptoms that you observed in the late sixties or that you diagnosed and observed becoming more acute into the seventies, previous diagnoses of the doctors, other doctors, your clinical assessment of active delusions, do you have an opinion, and the testimony that you heard in the court here, do you have an opinion as to whether or not Louis Reed was suffering from a mental disease and defect at the time of his conduct in June of 1980?

A. Yes.

Q. And what is that opinion?

A. My opinion is that he was suffering from a mental disease in June 1980.

Q. And what was that mental disease?

A. Schizophrenia paranoid type.

Q. And do you have an opinion, Doctor, as to whether or not he was as a result of that mental disease or defect, he was able to conform his conduct on June 19, 1980 to the requirements of the law?

[The Prosecutor]: Objection. May we approach the bench?

(Whereupon, the following proceedings were held at the bench out of the hearing of the jury):

[The Prosecutor]: Your Honor, that's the ultimate issue for the jury to decide. He can testify to the presence of mental disease or defect, but he can't answer the question as to whether or not under all of the evidence—

THE COURT: You will have to rephrase that question.

[Defense Counsel]: Your Honor, I think he is certainly entitled to give his opinion as to whether or not Mr. Reed's behavior was in conformance with his thought processes.

THE COURT: He may testify, but you asked the ultimate legal question that will be submitted to the jury that I sustain. You can rephrase your question.

(Whereupon, the following proceedings were held within the hearing of the jury):

Q. [Defense Counsel]: Doctor, I have been instructed by the Court to rephrase the terminology of my question.

Do you have an opinion as to whether or not Louis Reed's conduct was a result of his delusional thinking on June the 19th, 1980?

A. Yes.

Q. And what was that opinion?

A. The opinion is that it was.

■ A trial judge is given wide latitude in ruling on whether to admit or exclude evidence. *State v. Clark*, 711 S.W.2d 928, 932 (Mo.App.1986). Absent a clear abuse of discretion, we will not interfere with that ruling. *Id.*

That discretion was certainly not abused where, after telling defense counsel to rephrase his question as to whether defendant could conform his conduct "to the requirements of the law," the court permitted defense counsel to solicit Dr. Colistro's affirmative opinion that the defendant's conduct "was a result of his delusional thinking ..." The question in its original form was a direct and inappropriate invasion of the province of the jury acting under appropriate instructions from the trial court. Cf. *State v. Clements*, 789 S.W.2d 101, 109 (Mo.App.1990). Defendant's second point is therefore denied.

■ Defendant's third point is that the trial court erred in giving the parenthetical material in Instruction 9, based on MAI–CR2d 2.32, to the jury because it was not supported by the evidence. The disputed language states "except an abnormality manifested only by repeated anti-social conduct." Defendant argues that the evidence showed he suffered from a mental disease or defect, but did not indicate that there was an "abnormality manifested only by repeated anti-social conduct." Defendant admits that this issue was not properly preserved for appellate review because no objection was made to the instruction at trial and the issue was not raised in the motion for new trial. It is therefore considered only for plain error affecting substantial rights. *State v. Cole*, 753 S.W.2d 39, 41 (Mo.App.1988); Rule 30.20.

*Instruction No. 9*

The phrase "mental disease or defect," as used in these instructions, means any mental abnormality, regardless of its medical label, origin or source except an abnormality manifested only by repeated anti-social conduct.

In determining under other instructions given to you, whether the defendant had a mental disease or defect at the time of the commission of the offense charged against him and, if so, the extent and effect of it, the jury may take into consideration all of the facts, circumstances and opinions given in evidence. However, it is for the jury to decide the issue under the law as given to you in these instructions.

The applicable Note on Use to this instruction states that the parenthetical matter "should be omitted unless the evidence justifies calling it to the jury's attention. If there is evidence justifying reference to any one or more of such matters, it or they should be included in the instruction." MAI–CR2d 2.32, Note 2.[1]

In *State v. Collier*, 624 S.W.2d 30, 34 (Mo.App.1981), we held that the parenthetical material at issue was properly included. There, the defendant claimed that he was a paranoid schizophrenic and was unable to conform his actions to the requirements of the law. The State countered with evidence to the effect that drug abuse rather than mental disease or defect caused defendant to be unable to conform his actions to lawful behavior. The evidence also referred to anti-social behavior. *Id.*

Inclusion of the phrase has also been held to clarify the law for the jury by distinguishing between conditions when there is evidence of any of the parenthetical exceptions and mental disease or defect. *State v. Smith*, 649 S.W.2d 417, 432 (Mo. banc 1983); *see also, State v. Childers*, 791 S.W.2d 779, 781 (Mo.App.1990) (addressing MAI–CR3d 306.02, formerly MAI–CR2d 2.32). In this case there was ample evi-

---

1. There are two other parenthetical phrases which could be inserted. However, they are inapplicable to the facts of this case.

924

dence of defendant's anti-social conduct such as incest, prostitution, and substance abuse, along with robbery, burglary, and homicide. The jury heard defendant's evidence on mental disease or defect, and then the State's rebuttal evidence which revealed that defendant suffers from a personality disorder, but has no mental disease or defect. The parenthetical portion of the instruction clarified the law for the jury by distinguishing between the evidence presented by the defense and the State. There was no error in including the parenthetical matter. Defendant's third point is, therefore, denied.

 Defendant's fourth point is that he received ineffective assistance of counsel. Defendant did not file a motion pursuant to Rule 29.15 and concedes that a claim for relief cognizable under Rule 29.15 may not be considered when presented for the first time on appeal. *State v. Wheat*, 775 S.W.2d 155, 157–158 (Mo. banc 1989). He argues, however, that he acted on his own behalf at trial for the purpose of objecting to his counsel's actions in introducing evidence of other crimes. At sentencing the court advised defendant of: (1) his right to file a motion pursuant to Rule 29.15; (2) the matters which were cognizable under the rule; and (3) that the rule provides the exclusive procedure through which defendant could seek relief for those claims. The trial judge was, in fact, adamant in his instructions that, before he was transferred back to Oregon, defendant receive the proper forms with which to file the motion.

Our Supreme Court has held that the time requirements contained in Rule 29.15 are both constitutionally valid and mandatory. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989). There is no contention here that a motion was ever filed, despite the trial court's admonitions regarding defendant's obligation to file. Defendant's failure to file a post-conviction motion constitutes a waiver of his right to proceed. *King v. State*, 772 S.W.2d 18, 19 (Mo.App. 1989).

In so stating, we are mindful of the recent decisions *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991) and *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991). These two cases were decided within the context of attorney failure to amend timely filed *pro se* motions. They do not alter the mandatory time limitations provided in Rule 29.15. Defendant's fourth point is, therefore, denied.

The judgment of the trial court is affirmed.

REINHARD, P.J., and CRANE, J., concur.