**STATE of Missouri, Respondent,**

v.

**Stanley BOYD, Appellant.**

**No. 49593.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 14, 1986.

Motion for Rehearing and/or Transfer
Denied Feb. 25, 1986.

Application to Transfer Denied
April 15, 1986.

462

David C. Hemingway, St. Louis, for appellant.

John Munson Morris, George William Cox, Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Defendant, Stanley Boyd, appeals from a jury verdict finding him guilty on one count of capital murder, § 565.001 RSMo 1978, and sentencing him to life imprisonment without possibility of parole for fifty years. On appeal, defendant argues that the trial court erred in: (1) finding that defendant was competent to stand trial; (2) denying defendant's motion to prohibit the state from "death-qualifying" the jury; and (3) permitting a witness to testify to his conclusion that defendant stabbed the victim. Finding each of these arguments without merit, we affirm.

We review the evidence in a light most favorable to the verdict. On the night of April 6, 1983, the defendant and a companion, Melvin Thomas, entered the victim's home. They found the victim and a friend, Eric Douglas, in a bedroom. Defendant carried a six-inch long butcher knife. Defendant and Thomas forced the victim and Douglas onto the floor. Thomas tied Douglas's hands and feet with bed sheets, while defendant tied up the victim. Douglas was lying with his feet approximately four inches from the victim's head.

Douglas testified that defendant then began asking the victim where money and jewelry could be found in the house. Defendant left the room on one occasion, but returned some time later. Douglas testified that he then heard what sounded like kicking and punching, and then he heard the victim being stabbed. Douglas further testified that it was the defendant who stabbed the victim. Douglas testified that he could not actually see the defendant stab the victim, but he saw the defendant's tennis shoes next to the victim when he heard the stabbing sounds. Douglas testified that he could hear Melvin Thomas on the other side of his body, opposite the victim, when he heard the stabbing sounds.[1]

The victim died some time later. An autopsy revealed that the victim suffered several cuts and bruises on his upper body. The cause of death was determined to be a stab wound that cut a major blood vessel in the victim's lung.

Prior to trial the court held a hearing to determine whether defendant was competent to stand trial. Defendant had been committed to Fulton State Hospital, where he was interviewed by a court-appointed psychiatrist, Dr. Parwatikar. Dr. Parwatikar testified at the hearing that defendant was initially reluctant to speak with him, but began to respond when the doctor told him it might be in his best interest to do so. The doctor thereafter had a psychologist administer tests to the defendant. Defendant cooperated fully with the psychologist. Based upon his personal interview and the psychological tests, Dr. Parwatikar concluded that defendant was competent to stand trial. The doctor opined that defendant understood the proceedings against him, could discuss his problems in a fairly rational manner, and had a line of defense.

At defendant's request, the court ordered a second psychiatric examination, this time by a Dr. Wolfgram. Dr. Wolfgram testified that he had interviewed the defendant, reviewed police reports, and spoken with defendant's family members and acquaintances. Based upon this investigation, Dr. Wolfgram opined that defendant suffered from a major affective disorder and was "not in touch with reality."

The trial court was also apprised of the opinion of a third psychiatrist, Dr. Shuman. Dr. Shuman issued a written report after visiting defendant at the St. Louis City Jail on August 22, 1984. Dr. Shuman attempted to interview defendant on that visit, but defendant would not respond to questioning. Dr. Shuman did, however, speak with several of the guards who had frequent contact with defendant. Dr. Shuman also reviewed the findings and conclusions of Dr. Wolfgram and Dr. Parwatikar. Based upon this information, Dr. Shuman opined that defendant was not mentally ill and "would be able to assist his attorney in his defense provided he [chose] to do so."

The hearing judge attempted to question the defendant, but defendant offered no responses. After hearing all the evidence, the court determined that defendant was competent to stand trial. The court took judicial notice of the extensive pro se pleadings filed by the defendant, and of defendant's handwritten letters to the court. The court concluded that defendant's reluctance to speak with the psychiatrists and his refusal to answer questions at the hearing manifested frustration and obstinacy, but

---

1. Douglas also suffered several stab wounds, but was eventually able to free himself and escape through a window.

did not render him incompetent to stand trial.

In his first allegation of error, defendant alleges the trial court erred in finding him competent to stand trial. Defendant contends that, given Dr. Wolfgram's testimony, such finding was against the weight of the evidence. Defendant thus concludes that his conviction violated his right to due process.

■■■■ It is well settled that the trial and conviction of a person who is legally incompetent denies the right to due process. *Hemme v. State*, 680 S.W.2d 734, 736 (Mo. App.1984). "A person is not competent to stand trial if 'he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" *Gentile v. State*, 637 S.W.2d 30, 33 (Mo.App.1982), *quoting Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975). The question of a defendant's competence is one of fact for the trial court, *Battle v. State*, 674 S.W.2d 179, 181 (Mo.App.1984), and deference is accorded to the trial court in its observation of a defendant's mental capacity to proceed. *State v. Stewart*, 596 S.W.2d 758, 761 (Mo.App.1980).

■■■ In the case before us, the trial court did not abuse its discretion in determining that defendant was competent to stand trial. Although the evidence on this issue conflicted, it is the trial court's province to resolve such conflicts. Despite Dr. Wolfgram's testimony to the contrary, the testimony of Dr. Parwatikar and Dr. Shuman constituted substantial evidence of defendant's competency. Given this evidence, we must defer to the trial court's decision. Accordingly, we affirm the trial court's finding that defendant possessed sufficient mental capacity to stand trial.

■■■ In his second allegation of error, defendant alleges that the trial court erred in denying defendant's motion to prohibit the state from "death-qualifying" the jury. Death-qualification is the process whereby jurors who are unable to accept the death penalty as a punishment authorized by law are excluded from the jury. Defendant contends that death-qualification systematically excludes a distinctive segment of society and results in conviction-prone juries, thereby violating the sixth amendment right to a jury that represents a fair cross-section of the community. Defendant relies upon *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985), wherein the court held that death-qualification violates the sixth amendment.

■■ In a series of recent cases, the Missouri courts have expressly rejected the *Grigsby* decision and continued to hold that death-qualification does not violate the sixth amendment right to a fair and impartial jury. *State v. Malone*, 694 S.W.2d 723, 726 (Mo. banc 1985); *State v. Kenley*, 693 S.W.2d 79, 82 (Mo. banc 1985); *LaRette v. State*, 703 S.W.2d 37, 40–41 (Mo.App.1985). We need not restate the analyses set forth in those decisions, except to state that we concur therein. Accordingly, we affirm the trial court's denial of defendant's motion to prohibit death-qualification.

In his third allegation of error, defendant alleges the trial court erred in permitting Eric Douglas to testify that defendant stabbed the victim. Defendant contends that because Douglas admitted he did not actually see the stabbing, his identifying the defendant as the person who stabbed the victim constitutes inadmissible lay opinion testimony. Defendant concedes that he did not object to this testimony at trial, but asks that we review the alleged error under Rule 29.12(b), the plain error rule.

■■■ The plain error rule authorizes reversing a conviction if the defendant makes a strong, clear showing that an error committed in the trial court has resulted in manifest injustice or a miscarriage of justice. *State v. Cannady*, 660 S.W.2d 33, 37 (Mo.App.1983). If the defendant's guilt has been established by overwhelming evidence, no injustice results by refusing to invoke the plain error rule. *State v. Rogers*, 674 S.W.2d 608, 610 (Mo.App.1984).

■ A trial court has wide discretion in admitting opinion testimony, *State v. Carter*, 670 S.W.2d 104, 106 (Mo.App.1984), but the general rule provides that a lay witness must be restricted to statements of fact, not opinions or conclusions. *State v. Thomas*, 536 S.W.2d 529, 532 (Mo.App. 1976). Opinion evidence is admissible only if the jury, from want of experience or knowledge, is unable to draw a proper conclusion. *Lewis v. State*, 623 S.W.2d 562, 563 (Mo.App.1981).

■ The trial court arguably erred in allowing Douglas to testify that defendant stabbed the victim. Douglas admitted that he did not see defendant stab the victim. His testimony to that effect was not, therefore, a statement of fact based upon personal observation, but rather was a conclusion he drew from other observations he had made. The trial court should have restricted Douglas's testimony to statements of observed fact, leaving the jury to draw its own conclusion about who stabbed the victim.

■ Assuming *arguendo* that the trial court erred in allowing Douglas's testimony, the question nevertheless remains whether this error has caused manifest injustice or a miscarriage of justice. We find that it has not. The evidence indicates that defendant was wielding a knife and threatening the victim prior to the stabbing, and that he was standing next to the victim's body when Douglas heard the victim being stabbed. Moreover, the jury did not need to find that defendant actually stabbed the victim in order to convict him of capital murder. The jury instruction under which defendant was convicted (MAI–CR 15.02, modified by 2.12) provided that defendant was guilty of capital murder if he caused the victim's death *or* if he "aided or encouraged" Melvin Thomas in causing the victim's death. Given these instructions, the prejudicial effect of Douglas's testimony is significantly reduced. We therefore hold that the trial court's error did not cause manifest injustice or a miscarriage of justice.[2]

Judgment affirmed.

KAROHL, P.J., and SIMON, J., concur.

---

2. Defendant argues that the prejudicial effect of Douglas's testimony was increased during closing argument when the prosecutor characterized the "reasonable doubt" standard as a "firm conviction" of defendant's guilt. This sort of remark does not, however, rise to the level of plain error. *See State v. Williams*, 659 S.W.2d 778, 782 (Mo. banc 1983); *State v. Hunter*, 676 S.W.2d 34, 35 (Mo.App.1984).