**STATE of Missouri, Respondent,**

v.

**Stacie WHITE, Appellant.**

**Nos. 67593, 69747.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 28, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 17, 1997.

Application to Transfer Denied
April 29, 1997.

---

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kurt U. Schaefer, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RHODES RUSSELL, Presiding Judge.

Stacie White appeals after she was convicted of two counts of first degree attempted robbery, § 564.011 RSMo 1994[1], and two counts of armed criminal action, § 571.015, in the Circuit Court of St. Louis County. Defendant was sentenced to two terms of five years of imprisonment for the two counts of attempted robbery and two ten year sentences for the two counts of armed criminal action, all terms to be served concurrently.

Defendant raises two points on appeal. Defendant first claims that the trial court committed plain error when it permitted the prosecutor to comment on her post-arrest silence. In her second point on appeal, defendant claims the trial court erred in allowing the State to peremptorily strike a veni-

---

**1.** All statutory references are to RSMo 1994 unless otherwise indicated.

reperson over her *Batson*[2] objection. We affirm.

Defendant does not challenge the sufficiency of the evidence. The evidence viewed in the light most favorable to the verdict is as follows: On October 24, 1993, at approximately 3:00 a.m., a female and male college student were walking home from a party. A van pulled up beside the students. The defendant and another woman exited the van. Defendant pointed a gun at the male student and demanded that he give her his money. He handed her his wallet. Defendant then pointed the gun at the female student and told her to hand over her purse. Finding no money in the purse, defendant threw the purse at the female student hitting her in the face. Both defendant and her partner then jumped back into the van and sped away. The female student having memorized the van's license plate number, contacted the police and gave them a description of the assailants and the license plate number.

After finding the van that matched the student's description, the police went to defendant's home. Defendant answered the door and the police told her that they were investigating a robbery. Defendant stated she knew nothing about a robbery. Defendant allowed the police to search her home. She also agreed to accompany the police to the police station. Defendant was read her *Miranda*[3] rights and signed and initialed a card which explained those rights. During questioning, she told the police that at the time of the robbery she was riding around with her boyfriend, Damon, until 5:30 a.m.

Defendant then voluntarily participated in a lineup. The two students identified defendant as the person who robbed them. After the police told defendant that the students identified her as the robber, defendant became belligerent and said "f—— the prosecutor, f—— you guys and f—— yo mamma."

The police officers then informed defendant that they would be applying to the prosecutor's office for warrants and placed her under arrest. The police officers then left the room and did not question the defendant further.

At trial, the State presented the testimony of the two students and the two arresting police officers. Defendant also testified. On direct examination, she said that on the night of the robbery she was riding around with her boyfriend, Damon, but that she could not remember his last name, address, or phone number. Defendant testified that she told the police that she had Damon's phone number written down at her home. She said that after being identified in a lineup, she cursed the police officers who asked her to tell them why she committed the robbery. Defendant stated the officers indicated that they could get her "a deal."

■ The case was submitted to the jury, which found defendant guilty of two counts of attempted robbery and two counts of armed criminal action. This appeal ensued.[4]

In her first point on appeal, defendant claims that the State, in its case in chief, its cross-examination, and in its closing argument, improperly commented upon defendant's post-arrest silence. Specifically, defendant argues that the prosecutor should not have been allowed to comment as to why she did not provide the police with evidence to corroborate her alibi. Defendant maintains that such comments are in violation of her constitutional right to remain silent, and therefore, reversal of her convictions is required.

Defendant first objects to the following exchange during the State's direct examination of Detective Marbs:

Prosecutor: Okay now, Detective, I want you to, if you remember, to use exactly the

**2.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** Defendant filed a motion for postconviction relief pursuant to Rule 29.15. This motion was denied by the motion court without a hearing. Defendant appealed the denial of her Rule 29.15 motion. Defendant, however, failed to raise any points on appeal relating to the denial of her Rule 29.15 motion. Where a defendant appeals the denial of a Rule 29.15 motion, but fails to raise any points related to the denial of that motion in the brief on appeal, the appeal is considered abandoned. *State v. Link*, 916 S.W.2d 385, 386 (Mo.App.1996); *State v. Nelson*, 818 S.W.2d 285, 287 (Mo.App.1991).

words that the defendant used when she was informed that she had been positively identified.

Marbs: When she was told that she had been positively identified and we were going to apply for warrants at the prosecutor's office, to my recollection she first said, f— the prosecutor, and f— you guys, and f— yo' mama.

Prosecutor: After she had been told that she was positively identified, at that time did she give you Damon's last name?

Marbs: She did not, no, sir.

Prosecutor: At that time did she give you Damon's address?

Marbs: No, sir.

Prosecutor: At that time did she give you Damon's phone number?

Marbs: No, sir.

Prosecutor: Those were the only words she mentioned to you at that point of time?

Marbs: Yes, sir.

Later, during cross-examination, the prosecutor asked defendant why she did not get Damon's phone number from her house and give it to the police so they could verify that she was with him at the time of the robbery. Defendant said she did not speak to anyone at her house until two days later, and that she "never saw the police again" after the day of her arrest.

Defendant objects to the following portion of her cross-examination:

Prosecutor: Okay. Well, when you said, f— you, f— the prosecutor, f— yo' mama, I mean that was basically you saying that you didn't want to talk to the police anymore, right?

Defendant: I didn't have anything to talk to the police about.

Prosecutor: Well, I guess what I'm saying, is that at the point, that was your way of saying, I want to stand on my Fifth Amendment rights and not talk to you people any longer, right?

Defendant: I guess you could say that.

Prosecutor: You didn't say, let me call my family and get Damon's phone number, did you?

Defendant: No, I didn't.

Prosecutor: Okay. And you didn't say, let me try and track down Damon. And you can go talk to Damon and he will confirm that I was with him from 10:30 in the evening until 5:30 in the morning. You didn't say that, now, did you?

Defendant: No.

Prosecutor: [A]fter you had been identified, at that point after Detective Hagerty and Detective Marbs said you were positively identify [sic], not once, but twice—

Defendant: Uh-huh.

Prosecutor:—that's when you said the litany. But you never said, call my mom, let's get this cleared up. Let's talk to Damon. Let's get that phone number. I don't care what's going on, he can provide me with what I was doing from 10:30 p.m. to 5:30 a.m. You never said that, right?

Defendant: No, I didn't.

Prosecutor: Okay. But you had the opportunity, right?

Defendant: After the police walked out of the room, no, I didn't.

Prosecutor: Well, what do you expect them to do after you cursed at them like that, and they consider that to be an assertion of your Fifth Amendment rights, which you've already said it was?

Defendant: Uh-huh.

Prosecutor: And they walked out of the room, right?

Defendant: Right.

Prosecutor: You said it was an assertion of your Fifth Amendment rights and they honored that, right?

Defendant: I guess they did.

Prosecutor: And they never talked to you again, now, did they.

Defendant: No.

Finally, defendant contends that the prosecutor improperly commented on her post-arrest silence in his closing argument. In summarizing the case before the jury, the prosecutor said:

Yeah, she did the right thing. You know, she was, I didn't think I would get picked. And she didn't think she would get picked. What were her words after she got picked,

ladies and gentlemen? As offensive as they may be, what were her words? F—— you, f—— the prosecutor, f—— yo' mama. Uh-huh. That's it.

Ladies and gentlemen, look what happened. She was cooperative right down to the point of "you are the one." "You are the one that did it." Identified by two independent witnesses. That was when she was cooperative, ladies and gentlemen, that is exactly when she was cooperative. That is when, as she puts it, I asserted my Fifth Amendment rights. She agreed with me that she didn't want to talk to the police any more, and she didn't contact them any more to give Damon a call. She didn't do anything else.

When did the cooperation cease? When she knew she was good for it and we had her. That's when the cooperation ceased, ladies and gentlemen. That's exactly when it ceased. Because she knew, just as you are sitting there, that she is responsible for this.

■ Defendant concedes that her trial counsel failed to object to prosecutor's comments in the case in chief, cross-examination, and closing argument. She requests review under the plain error standard of Rule 30.20. Rule 30.20 provides that a court may consider plain errors affecting substantial rights if manifest injustice would result therefrom. Manifest injustice depends upon the particular facts and circumstances of each case. *State v. Zindel*, 918 S.W.2d 239, 241 (Mo. banc 1996) (citing *State v. Nolan*, 872 S.W.2d 99, 103 (Mo. banc 1994)). The Missouri Supreme Court has held that the improper use of post-*Miranda* silence can constitute plain error. *Zindel*, 918 S.W.2d at 241.

In exercising our discretion, we review defendant's constitutional claim under the plain error standard. *See State v. Flynn*, 875 S.W.2d 931, 934 (Mo.App.1994).

■ The law is well established that the State is not allowed to use a defendant's silence, at the time of arrest and after receiving *Miranda* warnings, for impeachment purposes. *State v. Anthony*, 857 S.W.2d 861, 868 (Mo.App.1993). The prosecution may not use the defendant's post-arrest silence as

either affirmative proof of guilt, nor to impeach testimony. *State v. Noel*, 871 S.W.2d 628, 629 (Mo.App.1994)(citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). The State may not show that an accused failed to volunteer an exculpatory statement, nor may it show that the accused failed to deny or explain, while under arrest, an incriminating fact about which no question was asked. *State v. Howell*, 838 S.W.2d 158, 161 (Mo.App.1992)(citing *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970)). The admission of the accused's post-arrest silence constitutes an invasion of his constitutional rights. *Howell*, 838 S.W.2d at 161.

■ A defendant's post-arrest silence, however, is admissible if the defendant gives a statement and thereby waives his right to remain silent. *State v. Wilson*, 826 S.W.2d 79, 82 (Mo.App.1992). Once a defendant's right to remain silent has been waived, all speech, or nonsilence, by him may be admitted into evidence and remarked on. *State v. Tims*, 865 S.W.2d 881, 885 (Mo.App.1993). Even testimony describing certain "silence" is "fair subject for comment" at trial until the waiver is revoked. The waiver of the right to remain silent may be revoked at any time, at which point the defendant's silence is again protected. The revocation of the waiver must be clearly made in order to be effective. *Id.*

The State argues in response that it was entitled to comment upon defendant's post-arrest silence because defendant's attorney "opened the door" in the opening statement by stating defendant had fully cooperated with the police. The State also argues that it was proper to comment upon defendant's post-arrest silence to rebut defendant's assertion during closing argument that she was prevented from explaining her version of the events to the police.

■ Although the State may not use the defendant's post-arrest silence as substantive evidence of defendant's guilt, the defendant's post-arrest silence may be used "to challenge the defendant's testimony as to his behavior following arrest." *Doyle*, 426 U.S. at 619 n. 11, 96 S.Ct. at 2246 n. 11. When a defendant has created an impression of general cooperation with the police, the

court may allow the state to elicit testimony of the defendant's post-arrest silence to rebut the impression of full cooperation. *U.S. v. Shue*, 766 F.2d 1122, 1129 (7th Cir.1985). When defense counsel raise the issue of cooperation, the prosecution is entitled "to a full and not just a selective development of the subject." *U.S. v. Fairchild*, 505 F.2d 1378, 1383 (5th Cir.1975).

We agree with the State that defendant attempted to convey the impression that she fully cooperated with the police. During the opening statement, defendant's attorney told the jury that defendant "volunteered and cooperated, did everything that she could, and yet she was being charged and that's why she is here today."

Later, during defendant's cross-examination of Detective Marbs, counsel for the defense asked Detective Marbs whether defendant spoke with him voluntarily and whether she voluntarily participated in a lineup. Defense counsel further asked Detective Marbs whether defendant was very cooperative with him.

On direct examination, defendant testified that she voluntarily accompanied the police to the police station, that she agreed to talk to the police without an attorney present, and that she agreed to appear in a lineup.

Finally, during closing argument, defense counsel asserted that defendant had all along "done the right thing" by cooperating with the police during the investigation. Defense counsel also implied during closing argument that defendant was prevented from providing the police with additional information concerning her alibi after her outburst because the police walked out of the room.

The evidence of defendant's post-arrest silence was admissible for the purpose of rebutting the impression that she fully cooperated with the police. Furthermore, the evidence was also admissible to rebut defendant's assertion that she was denied the opportunity to discuss her alibi because the police walked out of the room after her obscene outburst. *See State v. Henderson*, 724 S.W.2d 659, 661 (Mo.App.1987) (court did not plainly err in failing to act *sua sponte* to correct prosecutor's argument which referred to defendant's post-arrest silence because it rebutted defendant's claim that he was never given the chance to tell his side of story to the police).

The prosecutor's statement during closing argument that "[b]ecause she knew, just as you are sitting here, that she is responsible for this", may have been used as substantive evidence of guilt, rather than to rebut the impression that she cooperated with the police. Defense counsel, however did not object to this comment. Plain error will seldom be found in unobjected closing argument because failure to object prevents the trial court from taking corrective action. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). We find that the trial court's failure to strike the prosecutor's comment *sua sponte* or take some other form of corrective action was not plain error. *See Fairchild*, 505 F.2d at 1383.

Defendant did not suffer manifest injustice or a miscarriage of justice as a result of the prosecutor's comment on her postarrest silence. Point denied.

In her second point on appeal, defendant contends the trial court erred in allowing the State to peremptorily strike a venireperson over her *Batson* objection. Defendant, an African–American, claims that the venireperson was struck because of her race.

The Missouri Supreme Court enunciated the following procedure to be followed when addressing a *Batson* challenge: 1) the defendant must raise a *Batson* challenge to the specific venireperson struck by the State and identify the racial group to which the venireperson belongs; 2) the State must then "come forward with reasonably specific and clear race-neutral explanations for the strike;" and 3) if the prosecutor provides an acceptable reason for the strike, the defendant must then demonstrate that the State's "proffered reasons for the strike were merely pretextual and that the strikes were racially motivated." *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992).

In determining whether a defendant has carried the burden of proving purposeful discrimination, the trial court should

consider the plausibility of the State's explanations in light of the totality of the facts and circumstances of the case. *Id.* The trial court's determination that there was no purposeful discrimination is a finding of fact which will not be overturned on appeal unless clearly erroneous. *State v. Gray*, 887 S.W.2d 369, 384 (Mo. banc 1994). A determination is not clearly erroneous unless the appellate court has a definite and firm conviction that the trial court made a mistake. *State v. Dunn*, 906 S.W.2d 388, 391 (Mo.App.1995).

During peremptory challenges, the State struck venireperson Barbara Threats, an African–American. The prosecutor said that Threats was struck because "she seemed pained to the thought of recommending to the Court sending anybody to the penitentiary." The prosecutor also stated that Threats was struck because she worked at a local hospital. The prosecutor noted that Threats had a social worker mentality which in his experience made her an unacceptable State juror. Finally, the prosecutor mentioned that it had not struck another African–American venireperson because he found her to be an acceptable juror. The trial court found that the State had provided race-neutral reasons for striking Threats and denied defendant's *Batson* motion.

Defendant contends that the prosecutor's proffered reasons were not race-neutral. On its face, however, the explanations given by the prosecutor were race-neutral. Unless discriminatory intent is inherent in the State's explanation, the reason offered is deemed race neutral. *Purkett v. Elem*, 514 U.S. 765, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995). The burden is shifted to defendant to show that the State's explanations were merely pretextual. Defendant, however, did not present any evidence why the State's peremptory strike of Threats was pretextual. If the defendant fails to present evidence to support the contention that the State's explanation was pretextual, instead relying on general allegations about the State's reasoning, Missouri courts assume no *Batson* challenge is made, and the issue is not preserved for appeal. *State v. Mack*, 903 S.W.2d 623, 629 (Mo.App.1995). As such, defendant failed to establish that the State's justification for striking Threats was mere pretext.

After reviewing the record, we are not left with a definite and firm conviction that the trial court erred in permitting the State to peremptorily strike Threats. Point denied.

The judgment of the trial court is affirmed.

Simon and Karohl, JJ., concur.