**STATE of Missouri, Plaintiff–Respondent,**

v.

**Davy R. OGLE, Defendant–Appellant.**

**No. 21384.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 29, 1998.

Lew Kollias, Asst. Public Defender, Columbia, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Plaintiff-Respondent.

BARNEY, Judge.

Appellant Davy R. Ogle (Defendant) was convicted by a jury of the class D felony of driving while intoxicated. §§ 577.010.1; 577.023.3; 558.011.1(4).[1] Defendant was sentenced to the Missouri Department of Corrections for a term of four years. Defendant appeals.

As more fully developed below, in his sole point of error Defendant maintains that the trial court erred in allowing, over Defendant's objection, the prosecuting attorney to cross-examine Defendant regarding Defendant's post-*Miranda* failure to volunteer to law enforcement officers an exculpatory statement to the crime to which he was charged.

■ Defendant does not challenge the sufficiency of the evidence to support his conviction. We review the evidence and all permissible inferences therefrom in the light most favorable to the verdict and ignore any inferences that do not support a finding of guilt. *State v. Clemons*, 946 S.W.2d 206, 216 (Mo. banc 1997).

---

1. Defendant has two previous convictions in the Circuit Court of Jasper County for driving while intoxicated, June 25, 1987 and July 20, 1990.

All statutory references are to RSMo 1994, unless otherwise stated.

## I.

On April 23, 1996, at approximately 2:36 a.m., Officer Charles Brown of the Webb City Police Department came upon the intersection of Prospect and Central in Webb City and discovered a black Chevrolet Corsica, stopped, partially on the road and partially off the road.

The automobile appeared to Officer Brown to have been in an accident because its front end was damaged and one of its front tires was flat. Officer Brown parked his police cruiser behind the automobile. Officer Brown testified that the Corsica's head lamps were on and that its engine was running.

As Officer Brown approached the Corsica, he found Defendant in the driver's seat, slumped over the steering wheel. Officer Brown tapped on the Corsica's window but received no response from Defendant. Officer Brown then opened the driver's door and asked Defendant if he was alright. Officer Brown testified that "[h]e just kind of grunted at me." Officer Brown further testified that Defendant's eyes were watery, glassy, and bloodshot, and he noticed a very strong odor of an intoxicant coming from Defendant.

Upon again asking Defendant if he was alright, Officer Brown testified that "all of sudden he [Defendant] leaned forward, taking his jacket, and bending up over the steering wheel at that time he [Defendant] shut the ignition off. . . ." Officer Brown stated that he did not see the Corsica's keys after Defendant removed them from the ignition switch. Whereupon, Officer Brown grabbed Defendant's left arm and asked to him to step out of the vehicle.

Officer Brown stated that Defendant was staggering and could barely stand up. Officer Brown determined that due to Defendant's inability to ambulate, it would be unsafe to conduct a field sobriety test and placed Defendant under arrest for probable cause of driving while intoxicated.

Officer Brown read Defendant his *Miranda* warnings and transported him to the police station where *Miranda* warnings were read to him a second time.[2]

While at the police station, Officer Brown and Officer Pachlhofer completed an alcohol influence report and conducted a breathalyzer test on Defendant, after obtaining his consent. Defendant was unable to answer many of the questions asked in conjunction with the alcohol influence report.[3]

At trial, the State and Defendant stipulated to the results of the breathalyzer test and stipulated that the breathalyzer test was conducted by Officer Pachlhofer and that the breathalyzer machine was properly functioning when the test was administered to Defendant. The results of the test indicated that Defendant's blood alcohol content was 0.203 of one percent by weight.[4] The jury was advised of these stipulated facts by the trial court.

Defendant testified that he had not been drinking and driving on the evening in question. Defendant stated that at approximately 9:30 p.m., after he and his girlfriend had engaged in an argument, he left her at her home and began driving his automobile from Webb City toward Oronogo. He testified that on the way to Oronogo, "I wrecked my car on the curve out there." He stated that "[i]t was raining that day, and it slid off into the ditch."

2. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the Court sets out what has become known as "the *Miranda* warning" as a means of satisfying the "procedural safeguards" required to protect an individual's privilege against self-incrimination. *Id.* at 478–79, 86 S.Ct. at 1630.

3. *E.g.*, Defendant was asked "What time is it now?" He responded "I don't know." Defendant was asked "[w]hat is the date?" He responded "[d]on't know." Defendant was asked "[w]hat day of the week is it?" He responded that he didn't know. Defendant was also unable to tell the officer where he had been for the previous three hours. Defendant was asked whether he had been operating a vehicle; he responded to Officer Brown that he had been. However, Defendant was unable to tell Officer Brown what his destination was. Defendant admitted to Officer Brown that he had been drinking that evening.

4. "A person commits the crime of 'driving with excessive blood alcohol content' if he operates a motor vehicle in this state with ten-hundredths of one percent or more by weight of alcohol in his blood." § 577.012.1.

Defendant then testified that to get back to Webb City, "I caught a ride. I didn't know the people." He said after he was let out in Webb City, he walked to his mother's house to get his tow truck and that "I went and picked up the car out at the curve."[5] He stated that he towed the car from its location and proceeded to park it "beside my girlfriend's house" and left the keys to the car on the coffee table inside her house.

Defendant testified that he then returned the tow truck to his mother's house, and, intent upon returning to his girlfriend's house, he commenced walking back toward her house. Taking a circuitous route by way of a liquor store, Defendant purchased two bottles of "Hot Damn Cinnamon Schnapps." He said that he consumed both bottles while walking from the liquor store to his girlfriend's house.

Defendant further recited that upon arriving at his girlfriend's house at approximately 12:30 a.m., he knocked on the front door but no one answered. The door was locked. He then decided that he would get inside his car, parked nearby, in order to stay dry because it was raining. He did so and turned on the radio and "just laid back in the seat." Defendant testified that the radio in this car will function without the ignition turned on.[6]

At approximately 2:30 a.m., Defendant testified that Officer Brown began tapping on the automobile's window. Defendant testified that Officer Brown asked " 'What have you done to your car?' I said, 'I don't know.' And rolled the window back up. He said, 'Could you please step out of the vehicle?' " Defendant testified that he complied and that Officer Brown then placed him under arrest.

## II.

At trial Defendant was cross-examined by the prosecuting attorney, following Defendant's objection, as follows:

Q. Do you think you told law enforcement before today this version of the facts that you related to the jury?

A. Not that I'm aware of.

As previously set out, Defendant maintains that the trial court erred in overruling his objection to the foregoing cross-examination by the prosecutor, as to whether he had previously told any law enforcement officer the same exculpatory story that he testified to at trial.

Defendant essentially argues that the State is barred from questioning Defendant regarding his post-*Miranda* failure to volunteer an exculpatory statement, and maintains that such cross-examination was a violation of his due process rights under the United States and Missouri Constitutions.

■ The extent of cross-examination of an accused rests largely in the discretion of the trial court, and an appellate court will not interfere unless that discretion is abused. *State v. Kitchen,* 950 S.W.2d 284, 287–88 (Mo.App.1997). However, while these general propositions are valid, they do not apply to cross-examination of a defendant on a subject that is protected by constitutional guarantees, particularly when there is a timely objection. *State v. Wilder,* 946 S.W.2d 760, 762 (Mo.App.1997)(citing *State v. Zindel,* 918 S.W.2d 239, 241–44 (Mo. banc 1996)).

"[T]he State may not use a defendant's post-arrest silence, *following the receipt of Miranda warnings,* as either substantive evidence of guilt or for impeachment." *Wilder,* 946 S.W.2d at 763; *State v. White,* 941 S.W.2d 575, 580 (Mo.App.1997); *see also Fletcher v. Weir,* 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982); *Doyle v. Ohio,* 426 U.S. 610, 618–19, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91; *State v. Hendrix,* 675 S.W.2d 919, 922 (Mo.App.1984); *State v. Roth,* 549 S.W.2d 652, 654–55 (Mo.App.1977).

■ Here, however, Defendant elected not to remain silent after he was arrested and was given his *Miranda* warnings. Indeed, Officer Brown testified that Defendant was "cooperative and polite."

---

5. Defendant testified that he worked for a wrecker service

and operated a tow truck for his employer.

6. On cross-examination, Defendant denied that his automobile's engine was running but acknowledged that its head lamps were probably on when Officer Brown approached the automobile.

As heretofore mentioned, at the police station, after having been given his *Miranda* warnings a second time, Defendant responded to several questions posed by Officer Brown in conjunction with filling out an alcohol influence report. *See* note 3, *supra.* After completing the alcohol influence report, Officer Brown testified, without objection, about an additional conversation Defendant had with him. In that conversation, Officer Brown recounted that Defendant "admitted that he was driving and he had been drinking and that there was nobody else with him."

 Where, as here, a defendant's right to remain silent has been waived, all speech, or non-silence, by him may be admitted into evidence and remarked on. *White,* 941 S.W.2d at 580; *see also Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980); *State v. Wilson,* 826 S.W.2d 79, 82 (Mo.App.1992).[7]

The prosecutor's cross-examination was based upon the differences between Defendant's earlier remarks to law enforcement officers, that he had been drinking and driving the night of his arrest, and his trial testimony that he drank only after he had wrecked his car. "[*Doyle* ] does not apply to cross-examination that merely inquires into prior inconsistent statements." *Anderson,* 447 U.S. at 408, 100 S.Ct. at 2182. "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Id.; White,* 941 S.W.2d at 580. "Once a defendant's right to remain silent has been waived, all speech, or nonsilence, by him may be admitted into evidence and remarked on." *White,* 941 S.W.2d at 580 (citing *Tims,* 865 S.W.2d at 885); *see also Hendrix,* 675 S.W.2d at 922.

■ The credibility of witnesses and conflicts in testimony are questions for the jury to resolve. *State v. Brown,* 953 S.W.2d 133, 136 (Mo.App.1997).

Having carefully reviewed the entire record in this matter, this Court concludes that the trial court did not abuse its discretion in overruling Defendant's objection to the prosecutor's cross-examination. Point denied.

The judgment is affirmed.

MONTGOMERY, C.J., and SHRUM, J., concur.

---

7. "[O]nce this right to remain silent has been waived, all speech, or non-silence, by a defendant may be admitted into evidence and remarked on." *State v. Tims,* 865 S.W.2d 881, 885 (Mo.App.1993). However, "[t]he waiver of this right may be revoked at any time, at which point a defendant's silence is again protected." *Id.* "A revocation of a defendant's waiver to his right to silence must be clearly made in order to be effective. It cannot be accomplished sporadically or incompletely." *Id.*