STATE of Missouri, Plaintiff–
Respondent,

v.

Dennis L. WILLIAMS, Defendant–
Appellant.

No. 25248.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 2003.

Rosalynn Koch, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Office of Attorney General, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

Dennis Williams ("Defendant") appeals his conviction for possession of a controlled substance (methamphetamine) with the intent to distribute in violation of section 195.211.[1] After the jury found him guilty, Defendant, as a prior and persistent offender, was sentenced by the trial judge to twenty years' imprisonment. Defendant alleges the trial court committed reversible error when (1) it overruled his objections to hearsay evidence, and (2) the court allowed the prosecution to read certain statutes to the jury. We disagree. We affirm.

## FACTS

■ We must view the evidence in the light most favorable to the verdict. *State v. Johnson*, 95 S.W.3d 221, 222 (Mo.App. 2003). On November 12, 1999, Defendant and Denise Longley ("Longley") were caught shoplifting a hair clip and several pens by Wal–Mart's loss prevention officer, Helen Coday ("Coday"). Coday testified that the couple, who had been living together for over one year, were working in conjunction to steal the items. After escorting Longley and Defendant to an office in the back of the store, Coday called the police.

Officer Tom Luellen ("Luellen") was the first to arrive on the scene. After reading them the *Miranda* warnings, Defendant and Longley waived their rights and decided to speak with Luellen regarding the shoplifting incident.[2] Luellen then "radi-

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. In *Miranda v. Arizona,* the United States Supreme Court set out what have come to be known as "the *Miranda* warnings" as a "pro-

oed to dispatch" to conduct a "standard check for wants and warrants." Thereafter, the couple was arrested, and Luellen conducted a search incident to arrest of both Defendant and Longley.

Defendant was in possession of $428 in cash and a large quantity of methamphetamine (11.74 grams). Upon discovery of the white powdery substance, Luellen asked Defendant what it was, and Defendant replied, "It's that damned old meth." Next, Luellen searched Longley's purse wherein he found smaller, individually-packaged quantities of methamphetamine, totalling 5.46 grams. Longley "made a gasping noise as her eyes opened very wide and her mouth opened and she ... seemed rather surprised." Then, Longley asked, "How did that get in my purse?", and Defendant "mumbled something unintelligible."

At the city jail, officer Kirk Manlove ("Manlove") interviewed Defendant. Again, Defendant admitted to possessing the methamphetamine, but claimed it was for personal use only. Even so, Manlove observed nothing about Defendant to indicate he was a user. Manlove also testified that amounts equalling less than three grams were typically personal user quantities; therefore, he questioned Defendant about his "source." Defendant told Manlove that he would pick up a pound of methamphetamine in Oklahoma City, transport it to his home, and bury it on his property. Manlove then asked Defendant if he put the methamphetamine in Longley's purse, and Defendant responded, "Well, I'll put it to you this way. We lived together for over a year."

At trial, Defendant testified that he had no knowledge that Longley possessed methamphetamine in her purse, and he denied that he engaged in any shoplifting

with her. As for the large amount of cash he carried, Defendant claimed he "[k]ind of feel[s] left alone if [he] ain't got it." Defendant also accused both Manlove and Luellen of lying about the conversations he had with them. Defendant further explained that the 11.74 grams of methamphetamine originated from "diet pills." The "diet pill" defense was based upon the following story.

Defendant was on vacation in Mexico, and he decided to visit a doctor to get some diet pills because he weighed 235 pounds. Defendant told the doctor he "wanted the best ones [the doctor] had." The doctor did not disclose the ingredients of the pills, but "just said take two a day, what—was what they was recommended to take, and he said if you took more, why, they would be better, or they would last longer." Defendant claimed he would crush the pills, mix them with vitamins, and ingest them with juice. Defendant was carrying the diet pill-vitamin mixture on the day he was arrested. Defendant presented a prescription from a doctor in Mexico for valium and the diet pills.

The jury found Defendant guilty of possession of a controlled substance with the intent to distribute. The trial court sentenced him to twenty years in prison. This appeal followed.

### Point I: Admissibility of Alleged Hearsay Evidence

In his first point relied on, Defendant alleges that the trial court committed reversible error "in overruling [his] objection and in allowing the State to introduce [Longley's] statement to [Defendant,]" i.e., "how did that get in my purse?" In objecting to the admission of this evidence at trial and in his motion for new trial, Defen-

---

· cedural safeguard" designed to protect an individual's privilege against self-incrimina-

tion. 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630[66,67], 16 L.Ed.2d 694.

dant argued that the truth of the matter posited by this evidence was two-fold: (1) Longley did not know the drugs were in her purse, and (2) Defendant put the drugs in the purse and intended to distribute them. With this as his continuing premise, Defendant characterized Longley's question as a "hearsay statement" and then claimed it did not fall into any exception to the bar against such evidence.

■ On appeal, Defendant makes essentially the same arguments. In sum, Defendant would first have this court characterize Longley's question as a "statement or assertion" under hearsay evidentiary rules.[3] He would then have us declare that this "question/ statement" was hearsay, i.e., it was offered to prove the truth of the matter asserted. Finally, Defendant would have us rule that the "tacit admission" exception to the hearsay rule did not attend here.[4] Defendant argues that the tacit admission rule does not apply, apparently believing that the trial court admitted the question under that rule, i.e., the court allowed the evidence to show Defendant's acquiescence to an accu-

sation when he "mumbled something unintelligible."

■ We review Defendant's complaint regarding the trial court's admission of evidence with the following principles in mind. A trial court has broad discretion in assessing the admissibility of evidence, and its ruling will not be disturbed on appeal absent a clear abuse of discretion. *State v. Hatch*, 54 S.W.3d 623, 631[16,17] (Mo.App. 2001). "Hearsay statements, or out-of-court statements used to prove the truth of the matter asserted, are generally inadmissible." *State v. Barnett*, 980 S.W.2d 297, 306[23] (Mo.banc 1998). If the statement is not offered to prove the truth of the matter asserted, it is not hearsay. *State v. Jones*, 863 S.W.2d 353, 357[7] (Mo. App.1993).

■ Assuming, without deciding, that Longley's question should be viewed as a statement or assertion in a hearsay analysis, (*see* n. 3), it still would not be hearsay. This follows because the State never offered this evidence to prove the truth of

---

3. Arguably Longley's *question* is not a *statement* or *assertion* under hearsay evidentiary rules. Cases holding that a *question* generally does not fit the definition of hearsay include *United States v. Oguns*, 921 F.2d 442 (2nd Cir.1990); *United States v. Daniels*, 48 Fed. Appx. 409 (3rd Cir.2002); *United States v. Lewis*, 902 F.2d 1176 (5th Cir.1990); *United States v. Wright*, 343 F.3d 849, 865–66 (6th Cir.2003); *United States v. Navarrete*, 95 F.3d 1159 (9th Cir.1996). One court has said a question is not an assertion, and accordingly, it is not and cannot be a hearsay statement. *Quartararo v. Hanslmaier*, 186 F.3d 91, 98 (2nd Cir.1999). Stated differently, "because a true question or inquiry is by its nature incapable of being proved either true or false and cannot be offered 'to prove the truth of the matter asserted,' it does not constitute hearsay." *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965, 971 (1995) (citation omitted). Other courts have held it is the intent by the speaker to make an assertion via a question

that governs the hearsay nature of the evidence. *See United States v. Jackson*, 88 F.3d 845, 847–48 (10th Cir.1996); *Ex parte Hunt*, 744 So.2d 851, 854–55 (Ala.1999); and *Powell v. State*, 714 N.E.2d 624, 627–28 (Ind. 1999). Here, we need not decide if Longley's question is a statement or assertion under the definition of hearsay. This follows because of our conclusion, *infra*, that Longley's question was not offered for its posited truth, i.e., (1) Longley did not know she had the drugs, and (2) Defendant put them in her purse with the intent to distribute them.

4. As an exception to the hearsay doctrine, the tacit admission rule can be used to show acquiescence in the truth of an incriminating statement when the accused fails to deny, contradict, or object to an accusatory statement made in his or her presence. *State v. Samuel*, 521 S.W.2d 374, 375 (Mo.banc 1975); *State v. Wallingford*, 43 S.W.3d 852, 855 (Mo.App.2001).

the assertion, namely, to prove Defendant surreptitiously put the drugs in her purse with the intent to distribute them. The State's theory of the case was that Defendant and Longley were working in conjunction while shoplifting. They had been in a relationship for over one year and lived together. Moreover, when asked if he had put the methamphetamine in Longley's purse, Defendant answered: "Well, I'll put it to you this way. We lived together for over a year."

From these facts, the State asked the jury to infer that the two were working together to distribute the methamphetamine and jointly possessed the contents of Longley's purse.[5] Although the State fully admitted that the question could be viewed as evidence that Longley did not know the drugs were in her purse, the prosecutor, in closing argument, asked the jury to find otherwise:

"What do you know about [Defendant and Longley]? They have lived together for over a year. They work together. You know they were working together to shoplift at Wal–Mart. And you know they're working together now, because who's got the big amount, the main stash? The defendant. What does ... Longley have? A smaller amount in total, but look at how it's done. It's bagged up, ready for sale. And look at these baggies, the corner baggies. What are they corner baggies of? A sandwich bag just like the one [Defendant] had. They were working together and he jointly possessed—he actually possessed the drugs from his pocket and jointly possessed with her the drugs in her coin purse."

■ This record persuades us that Longley's "[h]ow did that get in my purse" question was not proffered to show the truth of the matter that Defendant claims was being asserted. It was not offered to show Longley's lack of knowledge and that Defendant put the drugs in her purse with the intent to distribute. Consequently, the question was not hearsay and the trial court did not err when it overruled Defendant's objection thereto.[6] *Jones,* 863 S.W.2d at 357. Point denied.

### Point II: Reading of Statutes to Jury

■ In his second point on appeal, Defendant claims the trial court committed plain error by "permitting the state to read to the jury statutes regulating the prescriptions of Schedule II controlled substances in Missouri."[7] Defendant argues that the statutes were irrelevant to

---

5. The verdict director informed the jury that "[a] person who is not in actual possession has constructive possession if he has the power and intention at a given time to exercise dominion or control over the substance either directly or *through another person.*" (Emphasis supplied.)

6. The question falls outside the definition of hearsay for yet another reason. The question was utilized to show Defendant's response thereto which was entirely permissible because he waived his *Miranda* rights. *State v. Ogle,* 967 S.W.2d 710, 713[4] (Mo.App.1998); *State v. Anthony,* 857 S.W.2d 861, 868[11] (Mo.App.1993). When a statement is offered to prove subsequent conduct of one who heard the statement or to supply background and continuity, the statement is not hearsay.

*State v. Robinson,* 111 S.W.3d 510, 513[4] (Mo.App.2003); *State v. Foust,* 920 S.W.2d 949, 954 (Mo.App.1996); and *Shaw v. State,* 686 S.W.2d 513, 516 (Mo.App.1985).

7. During Defendant's cross-examination, the prosecutor asked the court to take judicial notice of sections 195.060, 195.080, 195.100, and 195.110.2

Defendant's "diet pill" defense was premised upon the diet pills containing methamphetamine. The gist of the four statutes is that medications containing controlled substances, such as methamphetamine, must remain in their original packaging and containers that are clearly labelled. Apparently, the prosecutor was using the statutes to show the absurdity of the "diet pill" defense.

any issue at trial, and by reading the statutes to the jury, the State "suggested that [Defendant] was guilty simply because the substance was not packaged correctly or because he received a large supply," contrary to the statutes at issue. Defendant fully admits that his claim is not preserved for review because he failed to object to the reading of the statutes at trial. Consequently, he asks this court for plain error review.[8]

In considering this request, we note that, at trial, Defendant not only failed to voice an objection, but he affirmatively led the trial court into the alleged error. Specifically, during discussions about reading the statutes to the jury, Defendant told the trial judge, "That's fine. In that scenario, I see no problem."

 No criminal trial or judgment should be affected, in any manner, by an error committed at the instance of the defendant. *State v. Goudeau,* 85 S.W.3d 126, 129 (Mo.App.2002); § 545.030.1. As distinguished from a simple failure to object, an announcement by the defense of "no objection" amounts to an affirmative waiver of appellate review of the issue. *Goudeau,* 85 S.W.3d at 128[1]; *State v. Markham,* 63 S.W.3d 701, 707[10] (Mo. App.2002).[9]

For the reasons stated in cases such as *Goudeau* and *Markham* and because the

*Baker* exception (*see* n. 9) is not implicated, this court declines to exercise its discretion to review for plain error. Point denied.

The judgment of conviction and sentence is affirmed.

PARRISH, J. and RAHMEYER, C.J., P.J., concur.

---

8. In pertinent part, Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

9. This hard and fast rule has one factually-based, rare exception as spelled out in *State v. Baker,* 103 S.W.3d 711 (Mo.banc 2003). There, the defendant filed a motion to suppress evidence. After a pre-trial evidentiary hearing, the trial court overruled the motion *Id.* at 715. Immediately prior to trial, defendant again moved to suppress evidence by adding additional grounds. This motion was

also overruled. *Id.* At trial, the prosecutor's opening statement mentioned items seized per a search warrant and again defendant urged their suppression. At that point, defendant asked the court for a "continuing objection," and the request was granted. *Id.* When the questioned evidence was offered in evidence, the defendant announced he had no objection. With that factual background, the *Baker* court held that when the evidence was proffered the defendant was merely stating "he had no objection other than the continuing objection." *Id.* at 716–17. Those are not the facts of this case.