**STATE of Missouri, Respondent,**

v.

**Adriano CLARK, Appellant.**

No. 25834.

Missouri Court of Appeals,
Southern District,
Division One.

June 22, 2004.

Mark E. Maddux, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane Dixon Crouse, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Adriano R. Clark ("Defendant") was convicted after a jury trial of the Class C felony of possession of methamphetamine, a controlled substance. § 195.202, RSMo.2000. He was sentenced by the trial court to five years' imprisonment in the Missouri Department of Corrections.

In his appeal, Defendant premises trial court error on the overruling of: (1) his objections to opinion testimony by a police officer; (2) his motion to suppress physical evidence; and (3) his *Batson*[1] challenge to the State of Missouri's peremptory strike of two venirepersons.

Defendant does not challenge the sufficiency of the evidence to sustain his conviction. "On review, we view the evidence in the light most favorable to the verdict[ ], and we do not consider contrary or adverse evidence." *State v. Mathews*, 33 S.W.3d 658, 660 (Mo.App.2000); *see also State v. Crawford*, 68 S.W.3d 406, 407–08 (Mo. banc 2002).

The record from the motion to suppress hearing—and largely duplicated at trial—shows that on January 31, 2002, Corporal Scott Umbarger and Officer Casey Wilson of the Springfield Police Department were on patrol when they saw a vehicle run through a stop sign. After the vehicle came to a stop in what was described as a well lit area, Corporal Umbarger walked to the passenger side of the vehicle, while Officer Wilson walked toward the driver. Defendant was a passenger in the vehicle. It was at this point that Corporal Umbarger, who was staying "just kind of back out of view where I could watch the occupants and see what their hands were doing," observed Defendant appear to "stuff[ ] something between his seat and the center console."

Corporal Umbarger also related that Defendant was "sitting in the passenger seat kind of sunk down in it a little bit, you know, kind of slid down where his whole body wasn't sitting straight up." He noted that Defendant's "hands were going down in between—there's a center con—an actual console in between the two seats. And between his seat and that side of the center console his hands were stuffing what looked like a small black object down in between the seat and center console."

Officer Wilson described Defendant as "dipping his shoulders, looking back repetitively and quickly. He made lots of movement with his upper torso . . . . scooting

---

1. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

down to his chair and looking back repetitively."

After the driver consented to the search of the vehicle, Corporal Umbarger searched the inside of the vehicle. He testified he "found a small black film canister with a white rock substance inside," which was located "between [Defendant's] seat about where the legs are and the center console stuffed down in between." The substance was later identified as methamphetamine.

During the suppression hearing the driver of the vehicle, Ashley Batson, testified that she "was hiding what they found in my car. It was a small black container that had the methamphetamine in it." Defendant denied attempting to hide anything in between his seat and the console and denied making "any sort of movements" with his body.[2]

In Point One, Defendant maintains the trial court abused its discretion in allowing Corporal Umbarger to testify, over his objection, "that the reason people slide down in automobile seats when they see a police car is because they are hiding for reasons of warrants or because they do not want to have contact with the police...." Defendant contends this constituted an opinion or conclusion and, while it was permissible for the police officer to have testified that he saw Defendant slide down in the seat, his testimony as to why he did so was not permissible. Quoting *State v. Mitchell*, 847 S.W.2d 185, 186 (Mo.App. 1993) as support, Defendant argues that while "trial courts have wide discretion in admitting opinion testimony, a lay witness must be restricted to statements of fact." Defendant further quotes *State v. Boyd*, 706 S.W.2d 461, 465 (Mo.App.1986), stating that "[o]pinion evidence is admissible only if the jury, from want of experience or

knowledge, is unable to draw a proper conclusion."

" 'The trial court is vested with broad discretion over questions concerning the relevance and admissibility of evidence.' " *State v. Bradley*, 57 S.W.3d 335, 340 (Mo. App.2001) (quoting *State v. Newton*, 925 S.W.2d 468, 472 (Mo.App.1996)). "We uphold the trial court's determination of these matters unless the court clearly abused its discretion." *Id.*

We note that "[a] witness may be qualified to testify as an expert although his knowledge may have been gained by practical experience rather than by scientific or formal training." *State v. Seddens*, 878 S.W.2d 89, 92 (Mo.App.1994). Here it is clear that the jury could have drawn its own conclusions from Defendant's actions without the necessity of opinion evidence from Corporal Umbarger. In this respect, the trial court arguably abused its discretion in not sustaining Defendant's objection. *Boyd*, 706 S.W.2d at 465. However, Corporal Umbarger's remarks did not speak to the ultimate question of Defendant's guilt or innocence, nor did Corporal Umbarger's remarks unnecessarily divert the attention of the jury from the question to be decided. *See State v. Skillicorn*, 944 S.W.2d 877, 892 (Mo. banc 1997). Based on the foregoing, Defendant has failed to demonstrate how such testimony was " 'so prejudicial that it deprived [him] of a fair trial.' " *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996) (quoting *State v. McMillin*, 783 S.W.2d 82, 98 (Mo. banc 1990)). Point denied.

In Point Two, Defendant maintains the trial court erred in overruling his motion to suppress physical evidence, i.e., the 3.45 grams of methamphetamine found in a small plastic wrapper inside the small black film container. He asserts he "had a

---

2. Defendant did not testify at trial.

legitimate expectation of privacy in the film container, in that the arresting officers opened the film container without probable cause and without a search warrant."

▆▆▆ "[T]he burden is on the State to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement...." *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). "However, '[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.'" *State v. Toolen*, 945 S.W.2d 629, 631 (Mo.App. 1997) (alteration in original) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978)). As a general rule,

> [o]ur review of the trial court's alleged error in denying the motion to suppress is limited to determining whether there is sufficient evidence to sustain the court's ruling. When determining the sufficiency of the evidence, we may consider the record made at the pre-trial hearing and the record made at trial. We review under an abuse of discretion standard. The trial court's ruling on a motion to suppress evidence will be affirmed unless it is clearly erroneous.

*State v. Middleton*, 43 S.W.3d 881, 884 (Mo.App.2001) (internal quotation marks and citations omitted). "Although we review the facts under a clearly erroneous standard, the issue of whether the Fourth Amendment has been violated is a question of law which we review *de novo*." *Id.*; *see also State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998).

▆▆▆ However, a "defendant who claims the protection of the Fourth Amendment must have a legitimate expectation of privacy in the place or thing to be searched." *Toolen*, 945 S.W.2d at 631.

"The reasonableness or legitimacy of the expectation is measured by concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* "A prosecutor may simultaneously maintain that a defendant criminally possessed the seized good but did not have an expectation of privacy in the vehicle or its contents." *Id.*

▆▆▆ In our review of the record, we note that at no time, either in the suppression hearing or at trial, did Defendant maintain that the black film container was his. Neither did Defendant make any claim in his suppression hearing that he had an actual, subjective expectation of privacy in the black film container or its contents. Indeed, Defendant presented evidence during both the suppression hearing and at trial that the black film container belonged to the driver, Ms. Batson. At trial, Ms. Batson testified that "it was placed in the car by me. It was placed from—in the baggy that was found in the film container in my car in between the console of the seat." She also related, "I carried it with me. I always had it with me." Additionally, she denied that Defendant knew anything about the black film container being in the vehicle.

Here, Defendant was not a party aggrieved by the search and did not show a legitimate expectation of privacy in the black film container. He did not meet his burden to show that the search violated his Fourth Amendment rights. *See Toolen*, 945 S.W.2d at 633. Point denied.

In his third point, Defendant contends the trial court erred when it failed to sustain Defendant's objections to the State's peremptory strikes of venirepersons Michelle I. McCrimmons, apparently an African American, and Marina A. Rostallon, apparently a Hispanic. Defendant asserts the State exercised these strikes to

purposefully remove these veniremembers on the basis of race because, when challenged, the State offered no race neutral reasons for the strikes. We disagree.

With regard to procedures to be followed by a trial court when confronted with a defendant's timely objection, the Supreme Court of Missouri set out that when addressing a *Batson* challenge:

> the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

 *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992) (citations omitted). Additionally,

> [i]n determining whether the defendant has carried the burden of proof and established the existence of purposeful discrimination, the trial court should take into account a variety of factors. The chief consideration should be the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case.

*Id.* (citations and footnote omitted). Furthermore, "[t]he trial court's determination that there was no purposeful discrimination is a finding of fact which will not be overturned on appeal unless clearly erroneous." *State v. White*, 941 S.W.2d 575, 582 (Mo.App.1997). "A determination is not clearly erroneous unless the appellate court has a definite and firm conviction that the trial court made a mistake." *Id.*

 With regard to venireperson Rostallon, the prosecutor explained that he had not thought of venireperson Rostallon as being a member of a minority and noted that one of his concerns was that she was not a long-time resident of Springfield, nor did she identify where she was from. Indeed, she had given very few answers.

 As for venireperson McCrimmons, the prosecutor explained that being a single mother of two children and knowing that the defense testimony was likely to include the friends or girlfriend of the defendant, there was a question whether or not venireperson McCrimmons "might ... relate to the situation" resulting in sympathy to Defendant or his witnesses. Additionally, venireperson McCrimmons testified that she had a cousin incarcerated in Fordland, and that "she might be prejudice[d] against the system ... or, at least, have some bias in regard to the direct correlation of having a cousin in Fordland for drug possession...."

 Here, the prosecutor offered facially valid explanations for striking both venirepersons. Venireperson McCrimmons was a single parent of young children, and Defendant's only witness in the case, Ms. Ashley Batson, was a single parent and was going to testify that she baby sat for Defendant's son because apparently Defendant was a single parent. "Age and marital status are race-neutral, gender-neutral factors that the state may properly consider when making peremptory strikes." *State v. Barnett*, 980 S.W.2d 297, 302 (Mo. banc 1998). Additionally, her cousin was incarcerated in a Department of Corrections facility. "[N]umerous courts have found that the arrest, prosecution, or incarceration of a relative is a race-neutral reason for exercising a peremptory challenge." *State v. Johnson*, 930 S.W.2d 456, 461–62 (Mo.App.1996).

Venireperson Rostallon was not a long-time resident of Springfield, and she answered few questions during voir dire. A prospective juror's silence is a permissible, facially neutral explanation for a peremptory strike. *Barnett*, 980 S.W.2d at 302. On these facts, we are unwilling to hold that the trial court committed clear error in overruling Defendant's *Batson* challenges to the peremptory strikes made by the State. Point denied.

The judgment is affirmed.

PREWITT, J. and GARRISON, J., concur.